235 So.2d 888

**STATE of Alabama et al.**

v.

**Sam R. MURPHY et al., Gulf States Paper Corp., Tennessee River Pulp and Paper Co., Northumberland Corp., East Highland Co., Cleveland Land and Lumber Co., Weyerhaeuser Co., Charles P. Odom Estate and Weyerhaeuser Co., J. C. Shepherd, et al. and Hiwassee Land Co., A. M. Grimsley, Jr. et al. and Hiwassee Land Co., Jack M. Nolen, et al. and Hiwassee Land Co., Hiwassee Land Co.**

**6 Div. 26–37.**

Court of Civil Appeals of Alabama.

May 6, 1970.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, Asst. Atty. Gen. and counsel, Dept. of Revenue; Wm. H. Burton, Asst. Atty. Gen. and Asst. Counsel, Dept of Revenue, for appellants.

Holder & Moore, Fayette, Curtis, Maddox & MacLaurin, Jasper, for appellees.

WRIGHT, Judge.

There are twelve cases consolidated for this appeal. They originated in the Circuit Court of Fayette County and were consolidated there for trial. They were brought to the trial court as appeals from final assessments of ad valorem taxes for the tax year 1968 by the Board of Equalization of Fayette County.

At trial it was stipulated that all procedural requirements for a trial de novo by the circuit court had been complied with by the taxpayer appellants. The evidence before the trial court consisted of stipulations and testimony from the tax assessor and members of the Board. .It was the charge of the appealing taxpayers that the assessment by the Board was an intentional and systematic discrimination against them and in violation of the Constitutions of Alabama and the United States.

From the evidence and stipulations it appears that the Board began its work of assessing ad valorem taxes for Fayette County later than usual in 1968 due to the fact that two members were not appointed until March. They began work on March 11, 1968 with the purpose of reassessing all lands in the rural area of the county. It was their plan to use as a maximum assessment, the figure of 20% of fair and reasonable market value.

The Board proceeded without consideration of unit value, to reassess all rural lands and increase them across the board at 50%. Those lands which had been assessed $4.00 per acre were raised to $6.00. Those lands previously assessed at $6.00 per acre were raised to $9.00.

The lands of the appealing taxpayers, had since 1955, enjoyed a separate and

distinctive classification from all other lands in the county. Someone in the past had discovered there were tracts of land, owned by non-residents of the county, which were leased to timber or paper mill companies. These tracts had been designated on the tax records as "Block Lands" used exclusively for growing timber. Such "Block Lands," since receiving this designation, had been the recipients of a higher ad valorem tax assessment than other timber lands in the county.

When increased assessment was decided upon by the Board it appeared simple to make an across-the-board reassessment of the "Block Lands" without regard to other lands which could be similarly classified. It is clear, that though there were many thousands of acres of land in Fayette County owned by other taxpayers which were being used as timber lands, such timber lands had never been "blocked out" as to such use, as had the lands of the taxpayers here. It was further clear that the fair market value of such lands was more than sufficiently high to have borne the same assessment as the lands of the taxpayers here, and still have come within the 20% assessment of fair market value set by the Board. The evidence discloses that the only lands classified as timber lands in Fayette County and assessed by the Board of Equalization for the tax year 1968, at $9.00 per acre, were the "Block Lands."

After hearing the oral testimony and considering it together with the stipulations of the parties, the trial court entered its judgment on the 10th day of July, 1969, which judgment was subsequently amended on the 6th and 12th day of August, 1969. It is from the amended judgment that appellant, State of Alabama, brings this appeal.

The trial court made numerous findings of fact as a preface to its final judgment. Among others, the trial court made the following finding of fact:

"* * * (14) That each appellant's timber land is assessed at $9.00 per acre.

"* * * (15) That all other timber land, including the timber land owned by other parties as shown on 'Appellants Exhibit 2', is assessed at $6.00 per acre. * * *

"2. That the Board of Equalization of Fayette County, Alabama, hereinafter known and designated as the 'Board'— has a plan for the reassessment of all lands in Fayette County, Alabama consisting of the following:

"(a) For tax year 1968, to raise all "Block Lands" from an assessed valuation of $6.00 per acre to $9.00 per acre and all other lands assessed at $4.00 per acre to $6.00 per acre; * * *.

"3. That the term "Block Lands" as used by the Board means lands owned and used exclusively for the growing of timber, although all the lands in the County owned and used exclusively for growing timber is not included in the Block Land reassessment, only lands of appellants and two other land owners.

"4. That all the owners of land included in the term Block Land are non-residents of Fayette County, Alabama.

"5. That presently the appellants are being discriminated against in that their land is assessed at $9.00 per acre while other lands used for the same purpose and with the same production capability is assessed at $6.00 per acre. * * *"

The findings of fact are then followed with the judgment.

"NOW THEREFORE, IT IS THE ORDER, JUDGMENT AND DECREE OF THE COURT:

"1. That the assessments of the appellants for the tax year of 1968 be allowed to stand as finally reassessed by the Board at $9.00 per acre.

"2. That the existing assessments of appellants of $6.00 per acre for the tax year 1969 not be raised by the Board.

"3. That in the tax year of 1970 and in the following years, the lands of ap-

pellants be assessed by the Board for tax purposes at the same valuation as other lands, used for the purpose of growing timber with the same or similar production capability, regardless of ownership or the residence of the owners.

"4. That the Court retains jurisdiction of this case.

"Done in Open Court, this 10th day of July, 1969.

"/s Bob Moore, Jr.
Judge of said Court"

The subsequent amendments to the judgment, amended Paragraph 2 thereof by amplifying and expanding it, describing therein the amount of land, assessment and the exact amount of the tax liability thereon for the tax year 1969. We see no reason to set out any portion of the amendments to the judgment as we consider Paragraph 2, and any subsequent amendments thereof, to be void and without the jurisdiction of the trial court, for reasons which will be stated later in this opinion.

The appellant, State of Alabama, has appealed to this Court from the judgment in each of these cases, though appellant would like to have Paragraph 1 thereof remain undisturbed. That is the portion of the judgment which directs that the assessments of the appellee taxpayers for the tax year 1968 remain as finally assessed by the Board at $9.00 per acre. There is no cross-appeal filed by the taxpayers.

Appellant, State of Alabama, first assigns as error Paragraph 2, as amended, of the judgment of the trial court wherein the court ordered that the Board of Equalization, in its assessment of the taxpayers property for the tax year 1969 be reduced to $6.00 per acre. Appellant next assigns as error Paragraph 3 of the judgment which directs that the Board of Equalization for the tax year 1970, and in the following years, assess the lands of the appellee taxpayers in the same amount as other lands used for the purpose of growing timber with the same or similar production capability.

Upon observation, it is immediately clear that appellant's assignment of error as to Paragraphs 2 and 3 of the judgment are well taken.

■ We will not attempt to conjecture as to the reasons for the learned trial judge including in his judgment Paragraphs 2 and 3, for we feel certain that he was aware that he lacked authority or jurisdiction to direct or control the actions of the Board of Equalization in the assessment of real estate beyond the tax year 1968, which was the only matter presented by the pleadings before the court. We could guess that the learned judge was attempting to head off possible future appeals, and at the same time, by Paragraph 1 of the judgment, prevent the necessity of the return of ad valorem taxes paid by these taxpayers from the state, county, and city which had benefited therefrom.

The appeal in these cases was from the assessment of the Board of Equalization for the tax year 1968, which year began October 1, 1967, and ended October 1, 1968. Such appeals were taken under the provisions of Title 51, Sections 109 and 110, Code of Alabama 1940. These sections provide the statutory authority and method of appealing from a final assessment of a board of equalization. The notices of appeal and the petitions filed by the appellant taxpayers in the court below clearly were addressed to the final assessment of the Board of Equalization of June 14, 1968, for the tax year 1968. At the time these appeals were taken there had been no final assessment of the Board of Equalization for the tax year 1969, and certainly not for 1970 or following years. Is is admitted by appellee taxpayers in brief that Paragraphs 2 and 3 of the trial court's judgment were void and without jurisdiction. This proposition is so clear and elementary that we will not discuss it further.

Appellant, State of Alabama, further assigns as error the final decree of the trial court in that it found as fact from the evidence "That presently the appellants (the appellees on this appeal) are being discriminated against in that their land is assessed at $9.00 per acre while other lands used for the same purpose and with the same production capability is assessed at $6.00 per acre." Appellant charges that such finding was error, because "the conclusive evidence in this cause clearly shows that the Board of Equalization of Fayette County, Alabama, had a fair and systematic plan to reassess all the land in Fayette County, Alabama, including all timber land in said county, by 1971, and that it was making within a reasonable time, a conscientious and concerted effort to assess all those within a class or sub-class, including all owners of timber lands equally and uniformly, and that the Board had not intentionally or meaningfully discriminated against owners of timber lands, or members of any other class of landowners in said county."

We would not attempt to advise learned counsel for the State of Alabama how to prosecute an appeal, however, in the absence of a cross-appeal, we believe it would have been a better exercise of discretion not to have attacked the judgment of the trial court as to its finding of fact that appellee taxpayers had been discriminated against by the Board of Equalization in its assessment for the year 1968. (We cannot accept the argument that such is not the clear meaning of the finding of the trial court.) In spite of its

finding of discrimination against the taxpayers by the Board of Equalization, the trial court had allowed such assessment to stand. Since appellant has seen fit to attack such finding and to charge that such finding was clearly not supported by the evidence, it now becomes incumbent upon us to examine the evidence and to determine if the finding of the trial court was correct or plainly and palpably wrong, and thus require us to set such findings aside.

If, upon examination of the evidence before the trial court, we find such finding of fact to be correct and that a subsequent part of the judgment is in conflict therewith and not supported by such finding of fact, we would be remiss in our duty of review, if we did not remand the case to the trial court so that judgment could be entered in conformity with its finding of fact.

We have heretofore recited the material parts of the evidence, including stipulations of the parties. We shall now consider that evidence together with certain exhibits introduced in the court below by appellee taxpayers in light of appellant's charged error.

There was introduced into evidence on behalf of the taxpayers, appellants' Exhibit No. 1. This exhibit was a resolution admittedly duly adopted by the Fayette County Board of Equalization, under authority of which the final ad valorem tax assessments on the lands of the parties to these suits were made. We reproduce that Exhibit here.

"APPELLANTS' EXHIBIT 1

"RESOLUTION ON,

"Farm, Timber lands, and all other property subject to Taxation in Fayette County

"1. We, the members of the Fayette County Board of Equalization met April 1, 1968, for the purpose of adopting the following resolution, relative to reassessing Timber lands, farm lands and such other properties subject to Taxation in Fayette County.

"2. All farm lands that are assessed at $4.00 per acre will be increased to $6.00 per acre as a minimum. Other lands including pasture, farm and cut-over land

will be set at higher values per acre, as time and aid from the State of Alabama is available. Higher assessments may be made on Improved land after the Board of Equalization has made an inspection, and compared such land with other land in the immediate area, using such methods as a basis, as suggested by the State of Alabama.

"3. Certain Timber Companies that have large quantities of timber lands in Fayette County will be assessed at $9.00 per acre as a blanket Rate. No qualification as to the type of soil will be considered at this time.

"4. The reassessing of properties in Fayette County may not be completed in the year of 1968, if not completed the program will be continued into the Years 1969–1970, or such time as required to complete the programs.

"5. The procedure to be used in the reassessment will start on the letter (A) of the Alphabet and continue through the letter (Z).

"6. We do hereby solicit the aid and assistance of the Revenue Department of the State of Alabama, in the promotion of this project.

"FAYETTE COUNTY BOARD OF EQUALIZATION

"By   /s/ W. J. Holliday      Chairman
      /s/ Homer Nelson      Member
      /s/ R. T. Brock       Member "

———◆———

Taxpayers further introduced their Exhibit No. 2. This exhibit was a map of Fayette County which purported to show all timber land, including that of the parties hereto, to be found in large tracts in Fayette County. It was stipulated in Written Stipulation "15" as follows:

"That all other timber land, including the timber land owned by other parties as shown on 'appellants Exhibit 2', is assessed at $6.00 per acre."

In cross-examination of the chairman of the Board of Equalization by counsel for appellees, we find the following:

"Q In fact, what you did when you set about this reassessment and increasing the assessment by 50% was simply take lands out in the county, timber lands, and assess them at $9.00 an acre, if they were owned by timber companies or by individuals owning large tracts of timber land who lived outside the county, and you determined that everybody else's was going to be $6.00 an acre. Isn't that, in fact, what you did?

"A That does'nt hold true all the way through. There leased lands in this county that are not owned by timber companies.

"Q What you did was say, if this land was owned by a timber company or leased by a timber company its value is going to be based at $9.00 an acre.

"A Yes, sir."

It is very clear from the taxpayers exhibits, the stipulation and the quoted testimony, that it was the established and executed policy of the Fayette County Board of Equalization for the tax year 1968, that the owners of timber land previously set aside and designated as "Block Land", which lands just happened to be owned by nonresident owners or leased to paper companies, were assessed at one value while other lands used for the same purpose and with the same production capability were assessed at a lower value.

It is admitted by appellant, State of Alabama, that such procedure and action was discriminatory, however, appellant insists that such discrimination was not established by the evidence to have resulted from the administration of the tax law by

the Board of Equalization with a deliberate purpose or design to discriminate by a systematic method against the class of property-owner-tax-payers represented by the appellees. It is contended that the methods and procedures of the Board are supported by the decisions of our Supreme Court in the following cases, Barnes v. Dale County Board of Equalization, 283 Ala. 437, 218 So.2d 150; Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183.

In the case of Hamilton v. Adkins, supra, there was shown to be in existence a plan of review and revision of assessments for Jefferson County. Under the plan the county was divided into four districts. Tax assessments on properties located in one district were reviewed and equalized in one year, with the extension of this procedure in the other districts, respectively, in the three next succeeding years, with the idea that at the end of four years all assessments in Jefferson County would have been reviewed and equalized. Each unit of property located in the particular district under review was assessed in relation to 60% of its fair market value. It was clear in the Court's opinion that the increased assessments were not made under any arbitrary or fixed percentage of increase, but were fixed with regard to the increase in value of each particular unit.

The Supreme Court in its opinion stated the following:

"As we have pointed out mere inequality in valuation does not contravene constitutional provisions. The court found and we think correctly so, that there was no fraud, no bad faith nor evil design on the part of the board of equalization. * * *"

The complaint of the taxpayers in the Hamilton v. Adkins case was not that there was any arbitrary increase in assessment according to a particular classification, but that the four year plan gave them an assessed valuation which was measurably higher than the property of other taxpayers in the county which had not been reached for increase in assessment under the plan of the board. The taxpayers in the district chosen for first reassessment under the plan were assessed in accordance with the increase in fair market value of each particular unit. They did not complain that there was discrimination as between the taxpayers of the district, but that there was discrimination as between the taxpayers of that district and the taxpayers of the other districts of the county whose assessments had not been increased for that tax year.

The Supreme Court pointed out that mere inequality in valuation does not contravene constitutional provisions, to-wit, Sections 217 and 211 of the Constitution of Alabama, nor the Equality Clause of the Fourteenth Amendment of the Federal Constitution. It is only when there is a plan or intent to systematically or intentionally discriminate against an area, or class of taxpayers or class of property within a taxing area, and such plan smacks of fraud, bad faith, or evil design on the part of the taxing authority, that constitutional privileges are infringed. It was held that there was no such design or intention on the part of the board in the Hamilton v. Adkins case. The plan placed in effect indicated that the inequality of taxation placed upon the taxpayers of the first district chosen for reassessment was a temporary one due to the magnitude of the task involved. The Board of Equalization, with the working time provided it, was doing all that was humanly possible to do and it would take four years to review and reappraise all the taxable units in Jefferson County. It was plain that a plan must begin at some place in the county and that the board was working in good faith.

We see no need to repeat here the meaning of Sections 211 and 217 of the Alabama Constitution, and the Equal Protection Clause of the Federal Constitution as they are discussed in the Hamilton case.

We think it sufficient to quote the following:

"To sum up the situation, the effect of the equal protection clause of the Federal Constitution and state uniformity requirements are substantially similar and what violates the one will contravene the other. 51 Am.Jur. § 169, p. 225. In short there must be a systematic and intentional discrimination before the state constitution is violated."

We think there is a clear distinction between the situation and taxing plan described in the Hamilton v. Adkins, supra case, and the plan and procedure of the Board of Equalization of Fayette County in the instant case. In the *Hamilton* case there was present a clear and effective plan to re-assess property in Jefferson County by dividing the county into four districts, with each district being reassessed each year until the whole county was fairly reassessed. Such reassessment was done on a unit basis, with each taxable unit assessed in relation to its particular increase in value. There was no arbitrary or fixed percentage of increase according to a particular class of property. This was not the method nor the plan of the Board of Equalization in this case. As clearly shown by the resolution of the Board, which we have set out in full hereinabove, the taxpayer owners of so-called "Block Lands" had been designated to be increased on a strictly arbitrary or fixed percentage of increase, and with no regard whatever to difference in value of each particular unit. The classification of "Block Lands" within itself was an arbitrary classification. According to the evidence these "Block Lands" were scattered throughout Fayette County, and were close or adjacent to other timber lands which were not so classified. Not only were the lands themselves arbitrarily classified, but there was an arbitrary classification as to ownership, that of being non-residents of the county or under lease to timber companies. There was absolutely no consideration given by the board to dif-ferences in unit values. It surely can be assumed that some of the lands involved were markedly different in value, even though all were classified as timber lands. The fact that after reassessment it was admitted that such assessments were still less than 20% of the fair market value would not remove the stigma of inequality of assessment. Exact equality of assessment is not expected nor required, for from a practical and common sense consideration, equality of taxation is impossible to achieve. However, reasonable effort and diligence, using the best information and procedure available, must be made with as little human error involved as possible.

Section 217 of the Constitution of Alabama of 1901 provides as follows:

"The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate; provided, this section shall not apply to institutions devoted exclusively to religious, educational, or charitable purposes."

Section 211 of the Constitution of Alabama of 1901 must be considered in connection with Section 217. Section 211 reads in pertinent part as follows:

"All taxes levied on property in this state shall be assessed in exact proportion to the value of such property, * * *."

Section 211 requires assessments to be made in exact proportion to the value of the property. After the assessment has been made the rate of taxation is then applied and such rate must be the same under Section 217. The law in effect at the time this case arose set the rate of assessment at 60% of the fair and reasonable market value. Under the evidence in this case, even though the assessments were within the limitation of the rates set by law, it is clear that as between these taxpayers and others in the county owning land of comparable value and use, the same rate of taxation was not

applied and such action was in violation of Section 217.

It is equally clear that the Board of Equalization applied an arbitrary basis for valuation to the lands of the taxpayers in this case. Such arbitrary valuation was discriminatory not only in relation to other taxpayers in the county, but even as between the individuals involved in this appeal. Each was assessed at the same $9.00 per acre and no effort was made to conform with Section 211 of the Constitution, in that said section charges that all taxes shall be assessed in exact proportion to the value of such property. Since the action of the Fayette County Board of Equalization was in violation of Sections 217 and 211 of the Constitution of Alabama, it necessarily follows, that such action was also in violation of the Equal Protection Clause of the Constitution of the United States.

It is our conclusion, and we hold, that the action of the Fayette County Board of Equalization in entering the final assessment of ad valorem tax for the tax year 1968 against each of the taxpayers involved in this action was a systematic, intentional and fraudulent discrimination, and in violation of Sections 211 and 217 of the Constitution of Alabama of 1901, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. We further hold that the judgment of the trial court, as amended, as it pertains to the tax years 1969, 1970, and the "following years" was without jurisdiction and void, as the only matter presented for the consideration of the trial court by the appeal from the final assessment of the Board of Equalization, was the assessment for the tax year 1968. We further find that the portion of the order and judgment of the trial court directing that the assessments of the taxpayers involved, as assessed by the Board of Equalization for the tax year 1968, be allowed to stand, is in conflict with the trial court's finding of fact that the appellant taxpayers were discriminated against by the Board of

Equalization in its assessment for the tax year 1968. Since our review of the evidence convinces us that the trial court was eminently correct in its finding that the final assessments of the Board of Equalization as to each of the taxpayers involved in this consolidated action was discriminatory, we must conclude that the portion of the judgment entered contrary thereto must have been entered through oversight or mistake, we hereby reverse and remand each of the cases consolidated in this appeal to the court below and direct that it enter judgment in accordance with this opinion.

Reversed and remanded with directions.