341 So.2d 756 (1976)
The DEPARTMENT OF REVENUE of the State of Florida, and the Tax Assessor of Hillsborough County, Florida, Appellants,
v.
MORGANWOODS GREENTREE, INC., et al., Appellees.
No. 46785.
Supreme Court of Florida.
November 12, 1976.
Rehearing Denied February 14, 1977.
*757 Robert L. Shevin, Atty. Gen., David M. Hudson, Asst. Atty. Gen., and Brooks P. Hoyt, Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellants.
Joseph W. Castello, Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, for appellees.
OVERTON, Chief Justice.
This cause is before us on interlocutory appeal from a partial summary judgment of the circuit court in an ad valorem tax case. The judgment construed and applied Article VII, Section 4, of the Florida Constitution, and we have jurisdiction.[1]
The appellee, Tampa Villas South, Inc., is the only party in interest in this appeal.
This case concerns the propriety of ad valorem taxes imposed by the tax assessor in 1973 on the "common areas" of a housing project that consists of 200 platted resident lots and two identified common areas. The improvements constructed upon the platted resident lots are customarily known as "row housing." Each resident lot has a two-story, two- or three-bedroom town house which shares at least one party wall with an adjacent residence. The lot lines coincide with the exterior of the improvements. The individual property owners receive a fee simple title to their lot and the town house thereon. These resident lots were assessed to the record holders as separate taxable parcels by the tax assessor.
The "common areas" consist of the landscaping adjacent to the improvements, sidewalks, parking areas, swimming pool, tennis courts, and a playground area. The appellee, Tampa Villas South, Inc., holds the fee simple title to these common areas subject to the declaration which grants to each resident lot owner express easements for recreation, ingress and egress, lateral support, and vehicular parking. The declaration also regulates the use of the common areas and the residential lots, and requires appellee, Tampa Villas South, Inc., to maintain the exteriors of the individual properties and the common areas, said maintenance costs being assessed to the owner of each lot. The assessment is secured by a continuing lien against each resident lot in favor of the appellee, Tampa Villas South. Each of the 205 dwelling units are presently subject to an assessment of $300 per unit, which amounts to $61,500 for the total units annually.
On the assumption that each owner held an undivided interest in the common areas, the tax assessor initially taxed the common areas by charging each individual property owner a lump sum assessment. Advised that this was error, the assessor added the common areas separately to the tax roll and, using the cost method, assessed the 1973 ad valorem taxes against the legal titleholder, Tampa Villas South, valuing said property at $450,160. It is not clear from this record to what extent the beneficial use of and easements in the common areas available to each of the dwelling unit owners were included in the assessed value of those dwelling units.
The trial court awarded Tampa Villas South, Inc., a partial summary judgment, expressly holding that Section 193.011, Florida Statutes,[2] and Article VII, Section 4, *758 Florida Constitution,[3] required the assessor to consider the lot owners' restrictive encumbrances in the common areas when valuing it for ad valorem taxation. The court noted that the assessor had failed to consider the restrictive encumbrances and directed him to reevaluate the property for taxation.
We agree that there must be a reevaluation of the property. We reaffirm the general rule that in the levy of property tax the assessed value of the land must represent all the interests in the land. Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834 (Fla. 1970); McNayr v. Claughton, 198 So.2d 366 (Fla.3d DCA 1967). This means that despite the mortgage, lease, or sublease of the property, the landowner will still be taxed as though he possessed the property in fee simple. The general property tax ignores fragmenting of ownership and seeks payment from only one "owner." See 1 Bonbright, Valuation of Property, 495-96 (1st ed. 1937). An encumbrance or restriction such as an easement will not per se reduce the assessment value of land simply because the owner has been divested of some proprietary interest. This does not mean, however, that an assessment may be made without regard to the effect of an encumbrance on the value of the land. The encumbrance becomes one factor among many the assessor must consider in determining the just value of the property to be taxed.[4]
In valuing the subject residential improvements and the common areas for ad valorem tax purposes, the total assessed value of the entire property should equal its just full value taken as a whole. How the taxes are to be individually assessed and computed is the issue in this cause. Regardless of the method, the construction and implementing statutes must be interpreted so as to achieve an assessment at just full value; no construction or tax assessment may be allowed that would allow either the property owner an unjustified tax break or the government to collect more taxes that it is entitled.
It is inconclusive from this record whether a proper assessment has been made, that is, whether the assessed value of the individual units and the assessed value of the common areas equal the total just value of the lands and improvements comprising the total project.
*759 It is uncontroverted that the residential units are not usable without the common areas. They are entwined with each other. An analogous situation appears in Homer v. Dadeland Shopping Center, Inc., supra. The Dadeland case involved the assessment of shopping center property. The owner corporation did no business in the shopping center, but rented space to various tenants whose rights included customer use of the parking area. The assessor valued the parking lot and improved areas equally. This Court, while noting that the lot was impressed with restrictive covenants, upheld their disregard in valuing the lot because "the land used for the parking area is an integral part of the shopping center and just as important to its development as the land upon which the buildings are erected." The common areas of Tampa Villas South are also an integral part of the residential units, and the same treatment must be afforded in the instant case.
A realistic assessment approach must be made. The contention of Tampa Villas South that the properties should be nominally valued might give the property owners a tax break to which they are not entitled. On the other hand, the contention of the tax assessor might result in overtaxation. Under the circumstances of this case we find it is proper to assess the value of the common areas separately with an adjustment being made in the value of each residential unit. This leaves to the appellee, Tampa Villas South, the responsibility of collecting the taxes through the assessment authority of its declaration. The ultimate test is that the total valuation of the entire project must be just valuation, no more, no less.
The record reflects that the assessor considered the effect of the easements and common areas in valuing the residential units but did not adjust his valuation accordingly on the servient common areas. To this extent the assessor's exercise of his authority was invalid. We affirm the action of the trial judge, and direct that the subject properties be reassessed in accordance with the views expressed in this opinion.
It is so ordered.
ROBERTS, ADKINS, BOYD, ENGLAND and SUNDBERG, JJ., and FERRIS, Circuit Court Judge, concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] "193.011 Factors to consider in deriving just valuation.  In arriving at just valuation as required under s. 4, Art. VII of the state constitution, the [property appraiser] shall take into consideration the following factors:

"(1) The present cash value of the property;
"(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the governor when the moratorium prohibits or restricts the development or improvement of property as otherwise authorized by applicable law;
"(3) The location of said property;
"(4) The quantity or size of said property;
"(5) The cost of said property and the present replacement value of any improvements thereon;
"(6) The condition of said property;
"(7) The income from said property; and
"(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing."
[3] "SECTION 4. Taxation  assessments.  By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation, provided:

"(a) Agricultural land or land used exclusively for non-commercial recreational purposes may be classified by general law and assessed solely on the basis of character or use.
"(b) Pursuant to general law tangible personal property held for sale as stock in trade and livestock may be valued for taxation at a specified percentage of its value."
[4] Even at common law the general rule noted above was subject to the recognized exception that an outstanding, appurtenant easement interest must be considered in determining the property's tax value. See, e.g., Tax Lien Co. v. Schultze, 213 N.Y. 9, 106 N.E. 751 (1914); People v. Tax Commission of City of New York, 17 A.D.2d 225, 233 N.Y.S.2d 501 (1963); 1 Bonbright, Valuation of Property 495-97 (1st ed. 1937); Lee and LeForestier, Review and Reduction of Real Property Assessments, § 7:08 (1960).