Lake Forest Property Owners Association, Inc. (LFPOA), suffered an adverse judgment in the Circuit Court of Baldwin County on July 29, 1992, in its action challenging the assessment for ad valorem tax purposes of certain common areas of the Lake Forest development. The Court of Civil Appeals affirmed the judgment, which was based on the findings of the circuit court, sitting without a jury, that the encumbrances upon the common areas of Lake Forest did not completely reduce the value of the common areas. We granted certiorari review to consider the three issues raised in LFPOA's petition.
The first issue is one of first impression: whether the Court of Civil Appeals incorrectly decided the proper method of assessing for ad valorem tax purposes the common areas of a real estate development. The second issue is whether the decision of the Court of Civil Appeals — affirming the circuit court's holding rejecting LFPOA's argument that it had been denied equal protection in the assessment of its property — conflicts with State v. Alabama Power Co., 254 Ala. 327,48 So.2d 445 (1950). LFPOA argues that its property was assessed different from like property held by other taxpayers. The third issue is whether the opinion by the Court of Civil Appeals conflicts with State v. Murphy, 45 Ala. App. 637, 235 So.2d 888
(1970). LFPOA argues that it does, because, it argues, in its decision the Court of Civil Appeals has permitted the board of equalization to act arbitrarily by assessing taxes against LFPOA's lands without reference to a proper appraisal.
The Court of Civil Appeals has written two opinions in this case. The procedural history and the relevant facts are discussed in both of those opinions. See Lake Forest PropertyOwners Ass'n, Inc. v. Baldwin County Board of Equalization,587 So.2d 393 (Ala.Civ.App. 1991) (Lake Forest I), appeal after remand, Lake Forest Property Owners Ass'n, Inc. v. BaldwinCounty Board of Equalization, 659 So.2d 605
(Ala.Civ.App. 1994) (Lake Forest II). Lake Forest is a planned residential community consisting of 3,386 developed lots and 837 undeveloped lots. Lot owners are members of the LFPOA, which holds title to the common areas in the development. These common areas include two golf courses, four tennis courts, two swimming pools, stables, a yacht club and marina, a clubhouse, three restaurants, and various roadway and utility easements. The owners of the lots in Lake Forest are entitled to use *Page 609 
the common areas of the development and are required to pay a monthly assessment fee to LFPOA. In addition, when a lot owner initially purchases a lot the purchaser is required to pay a $750 fee. These fees are mandatory, and LFPOA resorts to legal process to collect fees if they are not paid by the lot owners. Each lot owner in Lake Forest has an express easement for recreation, lateral support, ingress and egress, and vehicular parking as to the common areas.
LFPOA is a nonprofit Alabama corporation. Most of the members of LFPOA are lot owners in the Lake Forest development, and nearly all of the lot owners are members of the corporation. See Ala. Code 1975, § 10-3A-26. LFPOA is responsible for the operation and maintenance of the common areas. The common areas of Lake Forest have consistently been operated at a financial loss by LFPOA.
 Valuation of the Common Areas
The first issue, essentially, is whether the circuit court erred in holding that the LFPOA was properly taxed for the value of the common areas of Lake Forest and that the assessor properly determined the value.
There is no dispute that record title to the common areas in Lake Forest is held by LFPOA. However, LFPOA contends that the encumbrances upon the common areas reduce the value of the property to zero, or to some nominal amount. LFPOA also argues that the value of the common areas is already reflected in the value of each individual lot and that to tax the individual lots and also tax the common areas results in double taxation.
It is well settled that all property, except that specifically excluded by statute, is to be taxed to its owner at its fair market value. Ala. Code 1975, §§ 40-7-1, 40-7-15, and 40-11-1. Thus, because LFPOA is the holder of record title to the common areas of Lake Forest, it is responsible for paying the ad valorem tax on the fair market value of the common areas. Therefore, the question is whether the trial court erred in holding that the common areas of Lake Forest had a value independent of the alleged increased value of the surrounding lots.
LFPOA asserts that the present case is very similar toTwin Lakes Golf Country Club v. King County, 87 Wn.2d 1,548 P.2d 538 (1976), Tualatin Development Co. v. Department ofRevenue, 256 Or. 323, 473 P.2d 660 (1970), and Department ofRevenue v. Morganwoods Greentree, Inc., 341 So.2d 756
(Fla. 1976). LFPOA asks this Court to hold that, because the common areas are encumbered by the easements granted to the lot owners in Lake Forest, the common areas have no independent value.
Twin Lakes, Tualatin Development, and Morganwoods Greentree
are factually somewhat similar to the present case. The TwinLakes court held that "when the use of land is so restricted that its ownership is of no benefit or value, the assessment for tax purposes should be nothing." 548 P.2d at 540 (citingTualatin Development). We have no quarrel with this rationale. However, we believe the proper statement of the appropriate standard for determining value is found in the Florida Supreme Court's decision in Department of Revenue v. MorganwoodsGreentree, Inc., 341 So.2d 756 (Fla. 1976). In MorganwoodsGreentree, the court stated:
 "An encumbrance or restriction such as an easement will not per se reduce the assessment value of land simply because the owner has been divested of some proprietary interest. This does not mean, however, that an assessment may be made without regard to the effect of an encumbrance on the value of the land. The encumbrance becomes one factor among many the assessor must consider in determining the just value of the property to be taxed."
341 So.2d at 758 (emphasis added).
Upon our review of the record, we cannot say that the Court of Civil Appeals erred in affirming the circuit court's holding that the tax assessor properly took into account the effect of the encumbrances in his valuation of the common areas of Lake Forest. The circuit court specifically found:
 "(a) The evidence as presented to this Court does not support the contention of *Page 610 
LFPOA that the value of the amenities is reflected in the lots of Lake Forest Subdivision.
 "(b) The value of the encumbrances, i.e. the right to use the amenities by the property owners, does not decrease the value of the amenities."
There was conflicting evidence as to the value of the common areas and the effect of the encumbrances on that value.
Furthermore, Tualatin Development and Twin Lakes were appeals by the states from determinations that the subject properties had no value. In the present case, the circuit court, after hearing ore tenus evidence, determined that the value attributed to the common areas of the Lake Forest development by the tax assessor took into account the effect of the encumbrances on the property.
 "[T]he ascertainment of market value of property is a factual matter, State v. West Point Mfg. Co., [236 Ala. 467, 183 So. 449 (1938)], and where the trial court sits without a jury, its decision is entitled to the weight of a jury verdict and is entitled to be confirmed absent a showing that the verdict is contrary to the great preponderance of the evidence. Dixie Auto Ins. Co. v. Lee, 288 Ala. 185, 258 So.2d 892 [(1972)]."
State v. Great Valley Land Investment Co., 53 Ala. App. 49,54, 297 So.2d 375 (1974). The circuit court's determination that the value of the common areas reflected the impact of the encumbrances upon the land is supported by substantial evidence and it is not contrary to the great preponderance of the evidence.
In support of its holding, the circuit court made the following observations:
 "9. Board experts testified that lots in Lake Forest generally sell for about $4,000 less than comparable lots outside Lake Forest.
 "10. LFPOA is depreciating its improvements based upon an approximate value of $8,000,000.
 "11. The tax assessor for Baldwin County valued the amenities at $6,031,000 for 1991. LFPOA does not disagree with this valuation."
The argument by LFPOA that the present system of taxing both the lots and the common areas results in double taxation is not well taken. The burden of the restrictive covenants and easements on the common areas reduces their marketability and thereby, presumably, reduces their market value to some extent, but we are unable to say that the tax assessor's valuation is so clearly wrong as to require us to overturn the judgments of the circuit court and the Court of Civil Appeals.
Section 40-11-1(b)(1) provides that "The subjects of ad valorem taxation, except as exempted by law, shall be as follows: (1) Every piece, parcel, tract, or lot of land in this state. . . ." If we were to allow these parcels of land owned by LFPOA to escape taxation, then valuable tracts of land could be removed from the tax roles of this state by carefully drafted restrictive covenants.
We agree that a tax assessor must take into account the effect of encumbrances upon the value of parcels of land. However, we reiterate what the Court of Civil Appeals stated in the first appeal involving these parties: " 'The encumbrance becomes one factor among many the assessor must consider in determining the just value of the property to be taxed.' "Lake Forest I, 587 So.2d at 394 (quoting Department of Revenuev. Morganwoods Greentree, Inc., 341 So.2d 756, 758 (Fla. 1976)). We find no question of first impression incorrectly decided by the Court of Civil Appeals in its affirmance of the circuit court's holding that the tax assessor had properly considered the encumbrances upon the common areas of Lake Forest among the many applicable factors to be considered in making a just valuation of the property.
 Unequal or Arbitrary Taxation
The second issue is whether the decision of the Court of Civil Appeals, that the common areas of Lake Forest were not shown to have been assessed and taxed differently than similar common area property in Baldwin County, conflicts withState v. Alabama Power Co., supra. LFPOA cites State v. AlabamaPower for the proposition *Page 611 
that § 211 and § 217, of the Alabama Constitution, as amended by Amendment 373, coupled with the Due Process Clauses of the State and Federal Constitutions, afford the equivalent of equal protection to taxpayers. See Also Howell v. Malone,388 So.2d 908 (Ala. 1980).
Section 211 states, in pertinent part:
 "All taxes levied on property in this state shall be assessed in exact proportion to the value of such property. . . ."
Section 217, as amended, states in pertinent part:
 "(c) With respect to ad valorem taxes levied by counties, municipalities or other taxing authorities, all taxable property shall forever be taxed at the same rate."
LFPOA asserts that the common areas of Lake Forest are treated for tax purposes in a manner different from the manner in which common areas of other developments in Baldwin County are treated. Primarily, LFPOA contends that the common areas of condominium complexes and other developments where the title to common areas is held in fractional shares by each property owner are not taxed separately. The distinguishing factor, as pointed out by the tax assessor, is that the lot owners in the other developments own fractional interests in the common areas. In Lake Forest the common areas are owned by LFPOA. LFPOA is entitled, via the same encumbrance that it claims reduces the value of the common areas, to receive a monthly fee from each of the over 3200 lot owners in Lake Forest. We find this distinction to be sufficient to justify different tax treatment. This is especially true in light of the fact that Alabama law requires that every piece of property be assessed to its owner at its fair market value. Ala. Code 1975, §§40-7-1, 40-7-15, and 40-11-1.
There was testimony regarding another development in Baldwin County, Ono Island, that may have had common areas owned by a property owners association. The record is unclear as to whether the common areas of that other development were taxed in a manner that was inconsistent with the treatment accorded Lake Forest. There was testimony regarding a master card file that is apparently used to record certain common areas that are not to be taxed. The property that qualifies for the master card file is assessed, but no tax bill is sent. The record is unclear as to whether there were common areas of Ono Island listed in the master card file. Despite the lack of clarity as to whether there were common areas that were owned by property owners associations listed in the master card file, the tax assessor of Baldwin County made it perfectly clear that it was the intention of the tax assessor's office to tax all properties that were similar to Lake Forest in the exact manner as that in which Lake Forest was taxed, i.e., to tax the common areas owned by property owners' associations.
 "The Supreme Court pointed out that mere inequality in valuation does not contravene constitutional provisions, to-wit, Sections 217 and 211 of the Constitution of Alabama, nor the Equality Clause of the Fourteenth Amendment of the Federal Constitution. It is only where there is a plan or intent to systematically or intentionally discriminate against an area, or class of taxpayers or class of property within a taxing area, and such plan smacks of fraud, bad faith, or evil design on the part of the taxing authority, that constitutional privileges are infringed. . . . The plan placed in effect indicated that the inequality of taxation placed upon the taxpayers of the first district chosen for reassessment was a temporary one due to the magnitude of the task involved. . . . It was plain that a plan must begin at some place in the county and that the board was working in good faith."
State v. Murphy, 45 Ala. App. 637, 644, 235 So.2d 888, 894
(1970). This statement of the law is applicable to this case.
The tax assessor stated that he knew of no other development like Lake Forest and that any developments that were like Lake Forest would be taxed in a manner identical to the manner in which Lake Forest was taxed. Specifically, Charles L. Jones, a property appraiser for the State of Alabama, testified as follows: *Page 612 
 "Q. . . . Mr. Blackburn was asking you questions relative to the master card index. Have you recently given as part of your capacity with the Department of Revenue instructions to the tax assessor of Baldwin County how he's to keep commonly held properties in the master card index?
 "A. Immediately following the last hearing on this matter.
". . . .
 "Q. [What was] the Department of Revenue's direction to him?
 "A. Several pages in length and [sets] out all of the various criteria that must be met in order to qualify for the master card file.
 "It was given to Mr. Johns, Mrs. Eddins and I think the chief appraiser Nancy Cox at the time. And it was requested that the master card be reviewed and to be sure that no parcels were in there that didn't qualify.
 "Q. Was part of it to treat all parcels in Baldwin County the same?
"A. Yes, sir.
 "Q. So, if they were not treated the same, is it mere error?
 "A. Right. That's what it should be, mere error."
From this unrefuted testimony it is apparent that any discrepancy between the ways in which the common areas of real estate developments were taxed was an error and not part of an intentional or systematic discriminatory scheme that smacked "of fraud, bad faith or evil design on the part of the taxing authority." State v. Murphy, supra.
Therefore, we hold that the circuit court did not err in holding that the taxes imposed upon LFPOA did not violate the State or Federal constitutions.
The final argument posed by LFPOA is that the Baldwin County tax assessor acted arbitrarily in assessing the common areas of Lake Forest. LFPOA initially argues that the tax assessor did not appraise the common areas of Lake Forest. This contention is apparently based, at least partially, upon the fact that the tax assessor did not use a comparable golf course sale in valuing the golf course. However, there is ample evidence in the record to support the tax assessor's valuation. The tax assessor used the market method for valuing the land in the common areas and the cost method for valuing the improvements upon the land. In doing this, the tax assessor necessarily appraised the common areas. Furthermore, as the circuit court specifically stated in its order, LFPOA did not disagree with the $6,031,000 value placed upon the common areas. LFPOA believed that this value was already taxed to the lot owners in the form of the increased value of the individual lots. There is no merit to the argument that the tax assessor arbitrarily valued the common areas of Lake Forest.
For the foregoing reasons, the judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON,* HOUSTON, KENNEDY, COOK and BUTTS,* JJ., concur.
SHORES, J., dissents.
* Although Justice Almon did not sit for oral argument and Justice Butts was not a member of this Court when this case was orally argued, they have listened to the tape of oral argument and have studied the record.