192 So.2d 749

**NATIONAL SECURITY INSURANCE COMPANY**

v.

**A. D. OLDS.**

**4 Div. 570.**

Court of Appeals of Alabama.

Dec. 6, 1966.

Joe C. Cassady, Enterprise, for appellant.

Jere L. Beasley, Clayton, for appellee.

JOHNSON, Judge.

This is an appeal by appellant from a judgment of a jury verdict in favor of the appellee in the amount of $1,000.00, and from a judgment of the trial court overruling appellant's motion for a new trial. The action was one for benefits due under a policy of insurance which insured the life of appellee's son who was killed on October 10, 1965, by drowning as a result of an automobile accident.

The policy in question contained the exclusions from coverage of the insured of "accidental injury, death, or other loss caused wholly or partly, directly or indirectly from injuries received while violating a law or while riding a private vehicle being driven in violation of a law or ordinance." The Certificate of Death states the time of death to be 12:20 A.M. from drowning. Tit. 36, Sec. 5(1), Code of Alabama, 1940, declares it unlawful for a person to operate a motor vehicle on most of the highways of the State of Alabama at a speed greater than fifty miles per hour during the hours of night. The accident occurred on Alabama Highway No. 130 in Pike County, Alabama. Mr. Michael Hunt, who was an Alabama State Trooper, investigated the physical scene less than thirty minutes after the accident. At that time Hunt had "been on the force" for thirteen months and had investigated approximately 150 to 175 accidents. He said that "facts and findings" were taught him in a six weeks course he had taken at the Police Academy in Montgomery, Alabama. He testified that his "physical findings" were, in substance, as follows:

The car was headed east toward the creek. It left the road on the right side about 433 feet from the bridge where there was heavy skidmarks on the shoulder of the road * * * it dropped off to two heavy skidmarks * * * At this time it only had two wheels that actually had traction of the shoulder of the road. The other two wheels were in mid-air over the bank. The under carriage of the frame was dragging for about 250 feet and the shoulder of the road was torn up. The automobile came back at a diagonal across the paved portion of the road tearing the right rear tire completely off. The automobile then struck the bridge abutment on the left side of the roadway and flipped in the air and went an additional 105 feet and landed in approximately 15 or 20 feet of water. The roadway was dry and in good condition. The shoulder of the road was in good shape. The speed of the automobile at the time of the accident was, in his opinion, from 105 to 110 miles per hour. The witness did not know the exact weight of the automobile. There was no doubt in his mind that the automobile was "accelerating" but he didn't know that it had stopped about a mile up the road to let off a passenger. He identified four photographs of the wrecked auto-

mobile. The road on which deceased was travelling at the time of the accident curved to his left and down hill, and was 19 feet and 10 inches wide. The road was paved— a slag-churt composition with a black sealer coat on it.

The automobile in which deceased was riding was a 1955 Pontiac and was owned by him. Deceased was 16 years of age on July 30, 1965.

Jimmy Green, age 17, testified on behalf of the appellee. He was a passenger in the automobile at the time of the accident. As to the speed of the automobile, he testified on direct examination:

"Q. Do you have an opinion as to how fast he was going when this wreck happened?

"A. I couldn't say.

"Q. You don't know?

"A. No, sir."

On cross-examination, Jimmy Green testified as follows:

"Q. Jimmy, you say that you have no opinion whatever as to how fast you were driving?

"A. I couldn't say close to how fast we were going. I don't know the speed.
* * *

"Q. When you came around this curve prior to the accident were you on the right side of the road or left side of the road?

"A. When we started in it we was on the right and tried to take it on the left.

"Q. You mean he was going at such a speed that he tried to * * *

"MR. BEASLEY: Object to that.

"COURT: Sustain.

"Q. Jimmy, that is your signature on that statement isn't it?

"A. Yes, sir.

"Q. You gave this statement just a few days ago, didn't you?

"A. Yes, sir.

"Q. In this statement didn't you say that you were driving 65 or 70 miles an hour in your opinion.

"A. I said we could have been going that fast but I don't know.
* * *

"Q. Didn't you say Alpheus [deceased] was driving coming around the curve driving about 65 to 70 miles per hour?

"A. I ain't for sure but I said that yes sir."

The written statement in question was never admitted into evidence.

Miss Carolyn Olds had gotten out of the automobile at her home immediately prior to the accident. Part of her testimony was as follows:

"Q. Would you tell the court and jury what he [deceased] did in so far as letting you out of the automobile. What happened that night?

"A. He just pulled up in the yard and let me off and backed out and went on.

"Q. Did you hear him going down the road?

"A. Yes, sir.

"Q. Would you tell the Court how he left your house. Did he scratch the wheels off or spin them or leave gradually?

"A. He just drove off normally.

"Q. You didn't hear any tires squeeling?

"A. No, sir.

"Q. About a mile from where he left you up until where this wreck happened. Is that right?

"A. Yes, sir."

Appellant's Assignments of Error Nos. 1 and 2 are predicated upon the refusal of the court below to give the jury the general affirmative charge without hypothesis and the general affirmative charge with hypothesis. Appellant contends that the evidence is undisputed that the speed of the automobile which deceased was driving at the time of the accident was not less than 65 miles per hour and could very well have been 110 miles per hour.

The testimony of State Trooper Hunt could also be used by the jury in their determination of what law violation, if any, the deceased was committing at the time of his death.

 The effect, weight, or credibility of expert testimony present questions for the jury, when considered in connection with the other evidence material to the opinion so expressed. Duke v. State, 257 Ala. 339, 58 So.2d 764. The opinions of expert witnesses are not conclusive upon the jury; they are to be weighed like other evidence, such evidence being intended to aid the jury, and its value depending largely upon the intelligence, experience, honesty, and impartiality of the witness. The jury may reject it all, though it is without conflict. George v. State, 240 Ala. 632, 200 So. 602.

 Therefore, the question was properly for the jury since the evidence or the reasonable inferences arising therefrom furnished "a mere gleam", "glimmer", "spark", "the least particle", "the smallest trace", "a scintilla" in support of the contention that deceased was not driving in excess of the lawful speed limit. Alabama Great Southern Railroad Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, 64 A.L.R.2d 1190. There was no error in refusing to give for appellant the affirmative charge with or without hypothesis.

Appellant was refused its requested written instruction No. 3, which stated:

"I charge you gentlemen of the jury that if you are reasonably satisfied from the evidence in this case that Alpheus Daniel Olds was driving a private automobile in violation of the law of Alabama at the time of the accident testified about, then your verdict should be for the Defendant."

The court, in its oral charge to the jury, stated the following:

"* * * It does not cover a person who is injured while violating the law of Alabama or while he is riding in an automobile which is being driven in violation of the law * * * Now, the exact words are 'This policy does not cover the insured nor is a premium charged for: (G) injuries received while violating a law or while riding a private vehicle being driven in violation of any law or ordinance.' That was your exclusion in your original policy. The Plaintiff paid an additional premium to have a rider attached to it to make it last 12 months in the year and give him coverage for 24 hours a day. On that rider another exclusion, very similar to this but worded a little differently was included which, of course, would apply to the rider and to the main policy as well. It says this: 'This rider will not extend the coverage to include, nor will it cover accidental injury, death, or other loss caused wholly or partly, directly or indirectly (F) injuries received while violating a law or while riding a private vehicle being driven in violation of any law or ordinance.' I believe that is almost the identical language of the (G) exclusion that was in the original policy. As I say again, it boils down to the fact that the defendant says there was no coverage, we didn't issue a policy of insurance to cover a person who was injured under these circumstances because the defendant maintains that the automobile was being driven at the time of the accident in excess of the lawful rate of speed in Alabama. * * * So the whole law suit boils down to whether or not this auto-

mobile was being driven at the time of the accident in violation of state law."

It is clear that the oral instruction of the court substantially covered the instruction refused appellant. The court further charged in its oral instruction:

"* * * for a violation of the state law to give protection to the defendant that violation of the state law must have been the proximate cause of the accident * * *"

Whether or not the court's instruction on proximate cause was correct we will not decide because the appellant did not object to the court's oral instruction but instead announced satisfied. One cannot base his failure to object to the court's oral charge upon his belief that the court will give his requested instruction upon the same matter. Even if appellant's written instruction No. 3 had been given, it would not have touched upon the question of proximate cause. Therefore, there was no error in refusing appellant's written instruction No. 3.

This cause is due to be and the same is hereby

Affirmed.