294 So.2d 439

STATE of Alabama

v.

Ellis D. KENNEDY and June R. Kennedy.

STATE of Alabama

v.

Ralph D. KENNEDY and Margaret B. Kennedy.

Civ. 277 and 278.

Court of Civil Appeals of Alabama.

May 8, 1974.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue and Asst. Atty. Gen., Herbert I. Burson, Jr., Asst. Counsel, Dept. of Revenue and Asst. Atty. Gen., J. Dawson Britton, Asst. Deputy Dist. Atty., Jefferson County, for appellant, State of Ala.

**472**

Norman K. Brown, Bessemer, for appellees.

WRIGHT, Presiding Judge.

This is an appeal by the State from a judgment of the Circuit Court of Jefferson County rendered under the provisions of the Expeditious and Economical Tax Appeals Act. That act is an alternative to the general statute [Title 51, § 110], Code of Alabama 1940, providing for appeals from a decision of the County Board of Equalization fixing the assessed value of real property for ad valorem tax purposes. The Expeditious and Economical Tax Appeals Act, hereinafter called the Act, applies only to counties having a population of 400,000 or more.

The Kennedys protested and then appealed the assessed valuation of their real property by the Board of Equalization of Jefferson County for the tax year 1971. There were two separate appeals brought under the Act in the Bessemer Division of the Jefferson County Circuit Court. Such appeals were consolidated for trial and remain so upon this appeal.

The Act provides generally that an appeal to the circuit court may be taken from the decision of the board of equalization fixing the assessed value of real property. A three man commission remaining from a panel of nine, after the taxpayer and the state each strike three, shall be the triers of fact. The court appoints the panel of nine commissioners who are required to be licensed real estate brokers, salesmen or appraisers, with a minimum of five years experience in the profession and who are actively engaged in the profession, with their major livelihood derived therefrom. The commission has the duty of fixing and reporting to the court the assessed valuation of the property under the supervision and control of the court. The court has the duty to see that the parties have the opportunity to present to the Commission all data relevant to the value of the property, and of being heard by argument. The court has complete authority to make orders, rules and regulations as in the court's opinion will facilitate an expeditious and proper determination of the issues. The judgment of the court shall be in accord with the report of the commissioners. The commissioners shall have the right to fix the assessed valuation for years subsequent to that appealed from which have accrued after the date of appeal.

Appeal from the judgment of the circuit court is to this Court. Upon such appeal, the appellant may assign as error the report of the commissioners and the judgment of the court.

Acting under the provision of the Act, the circuit court appointed commissioners from whom three were chosen. It directed them to find the correct full market value of the pieces of real estate owned by the parties and involved in the appeal. A date was set for the receiving of relevant data and argument. All parties and commissioners appeared on the date set. Evidence from appealing parties as to the fair market value of their property was heard. Evidence from an expert appraiser retained by the Board of Equalization was heard. Documentary data relevant to the issue of ratio of fair market value used to determine actual assessment was submitted. Such data covered the ratio used by boards of equalization in every county of the state and the average of such ratios.

After the hearing the commissioners submitted a report to the court wherein they found the fair market value of each property for the tax years 1971 and 1972. The court entered judgment accordingly by applying to such finding a ratio of 13.3% for the year 1971, and a ratio of 20% for the year 1972, the latter year having accrued while the appeal was pending. The resulting amount after applying the respective ratio was entered by the court as the assessed valuations.

From the judgment the State appeals. It has assigned twelve errors and cites numerous propositions of law in support of such errors. The argument in support of the charged errors is divided into five segments. The effect, as we see it, is to argue five errors. We shall consider the five segments of appellant's argument.

The first contention is that by the provisions of Title 51, Section 110 and the decisions of the Supreme Court construing that statute, the final assessment of the Board of Equalization is presumed prima facie correct on an appeal therefrom. Therefore, the burden is upon the appealing taxpayer to overcome such presumption by clear and compelling evidence.

■ The contention of the State and propositions of law with supporting authority are correct when considered with

the statute cited. However, the unusual provisions of the Act include a specific exclusion of the application of Title 51, Section 110 to an appeal taken under the Act. The Act contains no provision for even consideration by the commissioners of the assessment made by the Board of Equalization. The clear and evident intent of the Act is to provide a trial or consideration de novo of the issue of the proper assessment of value for tax purposes of the property involved. The commissioners are required by the Act to be experienced experts in the field of real estate valuation. No such expertise is required for appointment to the Board of Equalization. It is our conclusion that provisions for an appeal under Title 51, Section 110 have no application to an appeal under the Act—Title 51, Section 110(1).

The second segment of appellant's argument charges that bias and prejudice by the trial judge was so exemplified by his questioning of the State's expert witness as to constitute reversible error. We cannot agree.

The learned and competent trial judge did, with probing questions, delve into the basis and method by which the witness formed his opinion of the fair market value of the properties. We have carefully read the portion of the transcript where such matter occurred. We find no indication of bias or prejudice for or against the State. It merely appears that the judge wished to know, and that the commissioners know, how the witness formed his opinion. Questioning of a witness by the judge is permissible within proper bounds. Rice v. Hill, 278 Ala. 342, 178 So.2d 168.

The State next contends that the testimony of their expert witness was so superior to that of the owners of the property as to the fair market value that it was error for the triers of the facts not to accept his opinion and disregard the opinion of the owners. This contention is far from correct. It is a well established principle of law that the triers of fact are not bound by the opinion of an expert witness. Dickey v. Honeycutt, 39 Ala.App. 606, 106 So.2d 665. They are free to consider any relevant evidence and apply their own knowledge and experience in reaching their decision. National Security Insurance Co. v. Olds, 43 Ala.App. 490, 192 So.2d 749. In the instant case the commissioners as triers of the facts were uniquely qualified to apply their own expertise to the testimony of the witnesses, particularly as to their credibility.

The State next contends that the judgment is due to be reversed because of admission of illegal evidence.

We have examined all of the evidence and particularly those pages of the transcript wherein the illegal evidence admitted over objection is purported to appear. Appellant states there to be three instances. The first was a question asked of appellee, Ralph Kennedy, as to whether there was much discrepancy in the assessed valuation of the property of a neighbor and his own. This question came after the witness had already testified as to the assessed valuation of the property of another neighbor and that of his own by the Board of Equalization. The witness had compared his property with that of the neighbor in relation to construction, age, size of house and lot, and finally value. The State had not made any objection to such evidence. When the same evidence had come in concerning the property of another neighbor, counsel for the State objected to the question on the ground that it called for a conclusion. There appears no ruling on the objection by the court. Answer was given and related testimony continued. No further objection was made nor motion to exclude.

The whole line of testimony by which the witness compared his property and that of his neighbor's in size, assessment and value was clearly inadmissible and subject to proper objection. However, the court is not in error if inadmissible

testimony comes in without objection and a ruling thereon appearing. The parties may try their case on illegal evidence if they so desire. Mersereau v. Whitesburg Center, Inc., 47 Ala.App. 146, 251 So.2d 765.

In the next instance charged to constitute error in admission of illegal evidence there appears no ruling on the objection. Therefore the court committed no error.

■ In the last instance there was an objection which was overruled. However, the objection was only general as to a line of questioning. No specific objection was made. The trial court will not be reversed for overruling an objection which fails to specify grounds unless such evidence is patently illegal. Title 7, Rule 33, Circuit and Inferior Court Rules. Harrison v. Baker, 260 Ala. 488, 71 So.2d 284. Our examination of the question objected to does not disclose that it called for patently illegal evidence.

■ By its fifth and last segment of argument, appellant charges that the trial court fell into grave error in applying an assessment ratio of 13.3% to the fair market value as determined by the commissioners. It contends that the proper ratio to apply was that of 30% allegedly applied by the Board of Equalization to all property in Jefferson County.

Title 51, Section 17(1) providing that all taxable property within the state shall be assessed for the purpose of taxation at not to exceed 30% of its fair and reasonable market value, was enacted in 1969 and was in effect at the time the 1971 assessments were made or due to be made. That statute was enacted by the Legislature in spite of Section 217 of the Alabama Constitution which provided that property of individuals of the State shall forever be taxed at the same rate. The appellate courts of the State have interpreted Section 217 of the Constitution to mean that all property must

be taxed at uniform ratios for ad valorem purposes. State of Alabama v. Alabama Power Co., 254 Ala. 327, 48 So.2d 445; Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183; State v. Murphy, 45 Ala.App. 637, 235 So.2d 888. Prior to the enactment of Title 51, Section 17(1) all property was directed to be assessed at a ratio of 60% of fair market value by Title 51, Section 17. This statute had never been literally followed by the various boards of equalization. The result was assessments of property using a wide range of ratios applied to purported fair market value. Each county followed its own course of assessments, disregarding Section 17 of Title 51 and the requirements of Section 217 of the Constitution that all assessments be under a uniform ratio throughout the State.

On June 29, 1971, a three-judge federal court in the case of Weissinger v. Boswell, D.C., 330 F.Supp. 615, rendered a decree declaring Section 17(1) of Title 51 of the Code unconstitutional because it allowed use of assessment ratios ranging from 0% to 30% of fair market value. It was therein determined that Section 17(1) violated both Section 217 of the Alabama Constitution and the Due Process and Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

The trial judge below considered the decision of *Weissinger* in determining the ratio he used in setting the assessments in this case.

The court had before it a joint exhibit prepared by the Research Department of the Birmingham Area Chamber of Commerce. This exhibit indicated the wide range of ratios used by the counties of the State in assessing property for ad valorem taxes. Such ratios ranged from a low of 7% to a high of 27.1%. The average was 13.3%. The ratio for Jefferson County was 24.8%. Section 17 of Title 51 required a ratio of 60%. It is all too clear that no one was following the statute and

**476**

that uniformity throughout the State required by the Alabama Constitution was being violated.

Considering all of these matters what was the court to do? It could have followed the statute and set the assessment at 60% of fair market value. Such would have been unfair and discriminatory because no other taxpayer had been so assessed. It could have assessed at the going ratio of 24.8% in Jefferson County. This would have been uniform with other Jefferson countians, but not satisfied the requirement of uniformity of ratios throughout the State. It chose to assess according to the average of ratios being used over the State. Such assessment was not uniform with that of any other taxpayer in the State, but at least it was a mean of all. It came closer to the requirement of the Constitution than any other ratio it might have used. As there was no ratio which could have been used to satisfy both the requirements of the statute and the Constitution, we cannot hold the court in error for choosing the least discriminatory ratio in relation to all of the collective property owners of the State.

In setting the assessments for the year 1972, the court used the ratio of 20% of fair market value. Such ratio was established for Jefferson County by amendment to Title 51, Section 17, passed by the Legislature in 1971. Appellant finds no fault in using the ratio of 20% for the tax year 1972.

After careful consideration of all errors charged by appellant, it is the decision of this Court that the judgments of the court below should be affirmed.

Affirmed.

BRADLEY and HOLMES, JJ., concur.