Can the Legislature require citizens in Jefferson County to pay a higher rate of ad valorem tax on the same class of property than citizens in other counties of the state are required to pay? We hold that, based on the material before us, we cannot find, as a matter of law, that the classification made by the Legislature is rational. We reverse and remand.
Plaintiffs, as taxpayers, brought a class suit to recover what they claim were "excess taxes" paid to the Jefferson County Tax Collector based upon the assessment ratios provided for in Title 51, § 17, Code of Ala. 1940 (Recompiled 1958), now § 40-8-1, Code 1975. They claimed that the levy of taxes based upon § 40-8-1, Code 1975, is unconstitutional because it constitutes a denial of equal protection and violates the Fourteenth Amendment to the Constitution of the United States in that they were required to pay ad valorem taxes to the Jefferson County Tax Collector on Class III based upon an assessment rate of 20% of the market value of the property while taxpayers in other counties were required to pay only at the rate of 15% of the market value of the property. In a final order granting the defendants' motions to dismiss, denying the plaintiffs' motion for partial summary judgment, the trial court opined:
"Plaintiffs' motion for partial summary judgment seeks a declaration that Section 40-8-1 (e), Code of Alabama 1975 (and its predecessor, Tit. 51, § 17 (5), Ala. Code 1940, as amended), is unconstitutional on its face, there being no issue as to any material fact with respect to that claim, thus entitling plaintiffs to judgment as a matter of law. In raising the constitutionality vel non of Section 40-8-1 (e), plaintiffs submit no supporting affidavits or other evidence or testimony as provided by Rule 56, as plaintiffs contend that the question is solely a matter of law and should be considered as such. In the memorandum brief filed by plaintiffs they observe that Section 40-8-1 (e) provides for an assessment for municipal and county tax purposes of fifteen percent (15%) of all Class III property in all counties except Jefferson and Morgan which provides for a twenty percent (20%) assessment, and claim that there is no rational basis for this distinction in assessment rates, and that the distinction `demonstrates a patent denial of equal protection in that residents of Jefferson County . . . who own Class III property are not being treated equally with other Class III taxpayers'. Plaintiffs make the claim, unsupported by any facts or evidence, that this distinction constitutes a denial of equal protection and violation of the Fourteenth Amendment to the United States Constitution.
"The plaintiffs contend that Section 40-8-1 (e), Code ofAlabama 1975, and its predecessor Section 17 (5), Title 51,Code of Alabama of 1940, as amended, violate the equal protection of the laws provision of the Federal Constitution. The plaintiffs thusly state the theory of such contention:
 "`The statutory scheme at issue permits and compels the assessment of property *Page 782 
of the same class at different ratios in different counties.' (First sentence in last paragraph on page 3 of plaintiffs' brief).
"To sustain such theory the plaintiffs rely on Weissinger vs.Boswell, D.C., 330 F. Supp. 615, herein called `Weissinger'.
"The Court agrees with the defendants that Weissinger does not hold that the equal protection of the laws clause of the Federal Constitution prohibits the assessment for municipal and county taxation of property of the same class at different ratios in different counties. Footnote 1 to the opinion inMcCarthy v. Jones, [D.C.] 449 F. Supp. 480, decided subsequent to Weissinger and after the adoption of Amendment 325 to the Alabama Constitution says this:
 "`Clearly there is no constitutional proscription against the adoption of different rates of taxation by the various local governmental units.' (emphasis added)
"By the sentence next quoted above, the Court in McCarthy
repudiated the principle for which the plaintiffs citeWeissinger. Court decisions, legal encyclopedias and preeminent text writers sustain such repudiation.
 "`On the other hand, taxes in different taxing districts in the state need not be uniform, where they are equal and uniform throughout the district for which the tax is levied. For instance, a county tax in one county may be based on a higher valuation or a higher rate than in another county.'
(underscoring supplied) 1 Cooley's Law of Taxation (4th Ed.), pp. 649 and 650.
 "`It does not mean, however, that the taxes levied by or with respect to the various political subdivisions or taxing districts of the state must be at the same rate.'" (Underscoring supplied) 71 Am.Jur.2d 472, § 152 of State and Local Taxes.
 "`Hence, there may be different rates of local taxation in such different subdivisions, provided there is uniformity within each particular county, municipality, or taxing district, and provided the purpose to be accomplished by the tax pertains to the district taxed, as discussed infra subdivision b of this section.' (Underscoring supplied) 84 C.J.S. 128, et seq., Section 38 of Taxation.
"Plaintiffs rely principally on the decision of the United States District Court for the Southern District of Alabama inMcCarthy v. Jones, 449 F. Supp. 480 (1978). In McCarthy the District Court held that the application of Section 40-8-1 (e) to seventeen counties involved in the case with respect to the assessment of Class II property at different rates so as to reduce assessment ratios as therein provided violated the equal protection clause of the Fourteenth Amendment to the United States Constitution as to the school of children who were plaintiffs in that case. The Court expressly held that the rates of assessment for county and municipal taxation in Jefferson County [were] not an issue in the litigation since the Jefferson County rates (as to Class III property) exceed the statutory rates for other counties. In McCarthy, the Court did hold that Amendment 325 to the Alabama Constitution was valid and that an assessment ratio in a county different from the assessment ratio in other counties could in a proper case be established by the Legislature.
"Section 1-1-16, Code of Alabama 1975, and Section 2 of Act No. 1216 of the 1973 Regular Session of the Legislature (Acts 1973, p. 2062), which act amended Title 51, Section 17 (5),Code of Alabama 1940, each provide a severability clause which authorizes the Court to consider Section 40-8-1 (e) (and its predecessor, Tit. 51, § 17 (5), Ala. Code 1940, as amended) as they apply to Jefferson County alone, unaffected by provisions applicable to other counties. The United States Supreme Court has held that the equal protection clause of the United States Constitution relates to equality between persons rather than between areas. Salsburg v. State of Maryland, 346 U.S. 545, [74 S.Ct. 280, 98 L.Ed. 281] (1954); McGowan v. State of Maryland,366 U.S. 420, [81 S.Ct. 1101, 6 L.Ed.2d 393] (1961); Toyota v.Hawaii, 226 U.S. 184, [33 S.Ct. 47, *Page 783 57 L.Ed. 180] (1912). The Supreme Court of the United States has held that State legislatures are presumed to have acted within their constitutional power despite the fact that in practice, their laws result in some inequality and that a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland,supra; Allied Stores of Ohio v. Bowers, 358 U.S. 522, [79 S.Ct. 437, 3 L.Ed.2d 480] (1959).
"The Alabama Supreme Court and the Court of Civil Appeals have held as valid laws relating to assessment of property in Jefferson County different from similar laws relating to most other counties in the State. Phillips v. Hinkle, 262 Ala. 330,78 So.2d 800 (1955); Smith v. Pullman, Inc., 280 Ala. 295,193 So.2d 516 (1966); State v. Kennedy, 52 Ala. App. 470,294 So.2d 439 (1974).
"After consideration of the pleadings, arguments of counsel, and the authorities submitted by counsel, the Court is of the opinion and finds that the provisions of Section 40-8-1 (e),Code of Alabama 1975, and of Tit. 51, § 17 (5), Ala. Code 1940, as amended, separately and severally, providing that in Jefferson County taxable property shall be assessed for municipal and county taxation at the ratio of assessed value to fair and reasonable market value as to Class III property at twenty percent (20%), does not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution, nor is invalid as being repugnant to the provisions of the Constitution of Alabama, or for any other reason alleged in the complaint as last amended. The Court accordingly further finds plaintiffs' motion for partial summary judgment is due to be denied. The Court deems and finds plaintiffs' claim with respect to the alleged patent invalidity of Section 40-8-1 (e), Code of Alabama 1975, to be the sole claim upon which plaintiffs seek relief."
Section 40-8-1 (e), Code 1975, provides, on its face that Class III property in Jefferson and Morgan Counties will be taxed at a different rate than Class III property in other counties.[1] The plaintiffs maintain that there is no rational basis for the distinction in assessment rates and that it is an arbitrary and grossly unequal application of the law.
The constitutional and statutory scheme for taxing property in Alabama has generated a substantial amount of concern and controversy over the past two or three decades. These disputes have been precipitated principally because of the failure of the Legislature and the taxing authorities to follow the mandates of the Constitution of 1901, which specifically provided for equality and ad valorem taxation. For example, § 211 and § 217 of the Constitution of 1901, provided, as follows:
 "Sec. 211. Property taxes to be assessed in exact proportion to value of property.
 "All taxes levied on property in this state shall be assessed in exact proportion to the value of such property, . . .
* * * * * *
 "Sec. 217. Property of private corporations, associations and individuals to be taxed at same rate; exception as to *Page 784 
religious, educational and charitable property.
 "The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate; . . ."
The appellate courts of this state have interpreted these sections of the Constitution to mean that all property must be taxed at uniform ratios for ad valorem purposes. State ofAlabama v. Alabama Power Co., 254 Ala. 327, 48 So.2d 445
(1950); Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183 (1948);State of Alabama v. Murphy, 45 Ala. App. 637, 235 So.2d 888
(1970).
In fact, this Court specifically said in the Alabama PowerCompany case, supra, that the intent manifested by § 211 and § 217 was, as follows:
 ". . . It can hardly be contended that after all these years of constitutional history there is a power to classify land and personal property of one taxpayer and tax it on a different basis from the land and personal property of others in the face of §§ 211 and 217."
Nevertheless, neither the Legislature nor the taxing authorities varied their taxing schemes. The inevitable happened in 1971, when a class action was filed in federal court, in which the plaintiffs alleged that the intentional and systematic refusal of state taxing officials to perform their duties in accordance with state law had denied them equal protection of the law under Amendment 14 to the Federal Constitution. A three-judge Federal District Court, noting that this Court had held that Alabama's own constitution had been interpreted as requiring "`uniformity and equality among all taxpayers, private corporations, associations and individuals alike', both as to ratio and percentage of taxation and also as to rate of taxation," declared Alabama's statutory scheme violated not only the Alabama Constitution, but also the Federal Constitution as well. Weissinger v. Boswell,330 F. Supp. 615 (M.D.Ala. 1971).
Alabama's answer to Weissinger was Amendment 325 which amended Section 217 of the 1901 Constitution to change the uniformity and equality among taxpayers to provide for three classes of property and to establish three different ratios of taxation for the three separate classes. The Legislature, in turn, enacted the statute under attack now, § 40-8-1 (e).
It is apparent on the face of the statute that the Legislature has attempted to establish a class [specified counties] within a class [Class III property] by varying the assessment ratios between counties insofar as both Class II and Class III property are concerned.
As to Class II property, § 40-8-1 (e) has already been declared unconstitutional by a Federal District Court inMcCarthy v. Jones, 449 F. Supp. 480 (S.D.Ala. 1978).
The Court, in McCarthy had to determine the identical constitutional question presented by the plaintiffs here. That Court framed the issue:
 "The named Plaintiffs are seeking declaratory relief finding that Title 51, Section 17 of the Alabama Code of 1940 (now Section 40-8-1 of the Alabama Code of 1975) violates both the state and federal constitutions, and that Amendment 325 (c) to the Alabama Constitution is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution."
The Federal District Court resolved the issue on plaintiffs' Motion for Summary Judgment in the McCarthy case by entering an order declaring § 40-8-1 (e) to be unconstitutional as repugnant to the provisions of the Fourteenth Amendment.
The McCarthy Court made the following finding:
 "Having acknowledged that the statutory scheme at issue permits and enforces the assessment of property of the same class at different ratios in different counties, the Court must next consider whether there is any legitimate state object in making such distinctions. The distinctions drawn by the statute are geographical, since the rates at issue are applicable to seventeen different Alabama counties. Salsburg v. Maryland, 346 U.S. 545, *Page 785 74 S.Ct. 280, 98 L.Ed. 281 (1954), noted by the Weissinger court, makes it clear that distinctions based on geographical lines are not per se unconstitutional, but there must be some showing `that the classification is neither capricious nor arbitrary but rests upon some reasonable consideration of difference or policy.' Weissinger v. Boswell, 330 F. Supp. at 623, citing State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248 (1931). Although the Court has received diverse answers and motions for summary judgment or dismissal from almost every one of the thirty-four defendants, together with an amicus curiae brief from various state associations, no one has yet taken the position that there is a legitimate state object supporting the enforcement of section 40-8-1. The Court is of the opinion that such a position could hardly be advanced under the state of the facts as presented. There is no rational pattern tying together the seventeen counties with decreased assessment ratios. The Court takes judicial notice that many sparsely populated, rural counties are on the list, such as Bullock, Hale, Wilcox, Perry, and Bibb counties. But there are other counties on the list that contain some of the larger municipalities within the state, such as Morgan (Decatur), Etowah (Gadsden), Barbour (Eufaula) and Houston (Dothan). Certainly there is no urban/rural dichotomy objective. Nor is there a geographical objective, since the list includes counties in every area of the state; some are contiguous, some are not. Facially, there is clearly no geographical justification for the statutory scheme. The Court is of the opinion that the statutory scheme at issue is totally without a rational basis in making distinctions between the ratios of assessment of ad valorem taxes in various counties, and that, on this basis, the statute is repugnant to the Fourteenth Amendment to the United States Constitution. Having resolved this question on federal grounds, the Court does not reach the issue whether the passage of the Act violated the Alabama Constitution."
The result reached in McCarthy followed a principle previously enunciated in Weissinger, where the Court stated:
 "Even if the State of Alabama were permitted by its own Constitution and laws to classify property for tax purposes, it is clear that its present ad valorem tax program still would not comport with the stringent requirements of the Federal Constitution. While distinctions based on geographical areas are not, in and of themselves, violative of the Fourteenth Amendment, Salsburg v. Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954), a state must demonstrate, if it wishes to establish different classes of property based upon different geographical localities — e.g, rural areas as opposed to urban areas — that the classification is neither capricious nor arbitrary but rests upon some reasonable consideration of difference or policy. State Board of Tax Comm'rs of Indiana v. Jackson, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248 (1931). Such a showing has not been made in this case.
 "Defendant has, for example, offered no explanation in an attempt to justify or explain why an urban area like Jefferson County assesses property at a higher percentage (26.8%) of actual cash value than does a rural area like Elmore County (9.7%), while at the same time an area like Dallas County with one municipality of substantial size — Selma — assesses property at a higher percentage (23.1%) of fair market value than does a similar area like Montgomery County (15.5%), which also has only one municipality of a substantial size. Nor has any evidence been submitted to explain why property in Dale County is assessed at 19.1 percent of fair market value, while property in neighboring Coffee and Geneva Counties is assessed at 13.5 and 9.2 percent of actual cash value.
 "Being unable to find any legitimate state objective to be served by the vast disparity which presently exists in Alabama's ad valorem tax program, this *Page 786 
Court is forced to conclude that the variation in percentages, as between geographical areas of the state, results in the arbitrary classification of taxable property and therefore violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment."
Following the McCarthy decision, the Attorney General of Alabama was requested to give an opinion on the validity of Section 40-8-1 (e) and was specifically asked:
"1. Does the decision of the Court in McCarthy, et al. v.Jones, et al., 449 F. Supp. 480 (D.C.Ala. 1978), require assessment of all Class II property at 25% of fair market value and all Class III property at 15% of fair market value?" The Attorney General answered this question in the affirmative on May 25, 1978. The opinion states:
 "The Court in the Violet Mary McCarthy case, supra, held that the last subsection of Code of Alabama 1975, Section 40-8-1, was unconstitutional, being repugnant to the Fourteenth Amendment to the United States Constitution in that it provided for variations in assessment ratios in different counties based on nothing other than geographical location, there being no rational pattern or basis for such variation. Since the statute itself and not merely the manner of its enforcement was held to be unconstitutional, subsection (5) or (e) is void ab initio and cannot be relied upon for any tax year. Norwood v. Goldsmith, 168 Ala. 224, 53 So. 84, see also 16 C.J.S. Constitutional Law 474 ff. Hence, 1978 taxes must be assessed and collected on the basis of Code of Alabama 1975, Section 40-8-1 (a) through Section 40-8-1 (d), which provide for assessment of all Class II property at 25% and Class III property at 15% of fair market value."
Following the decision in McCarthy and the Attorney General's opinion, the assessment ratio of property in both Jefferson and Morgan Counties was voluntarily reduced from 20% to 15% of market value.
We are aware of the principle that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." Madden v. Kentucky, 309 U.S. 83, 88,60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). We are also conscious that the Supreme Court of the United States held that a statute must be held constitutional in light of the Equal Protection Clause of the Fourteenth Amendment, if any state of facts can be conceived that would sustain it. Allied Stores of Ohio v.Bowers, 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480,486 (1959).
We are also mindful that a statutory discrimination should not be set aside if any state of facts reasonably may be conceived to justify it. McGowan v. State of Maryland,366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
The taxpayers recognize and admit that the Equal Protection Clause of the United States Constitution and the decisions inWeissinger and McCarthy do not require that the assessment rates of Class III property must be uniform across the State of Alabama. They candidly admit that if the Alabama Legislature has some reasonable consideration of difference or policy in taxing Class III property in Morgan and Jefferson Counties at different rates than the other 65 counties in the State of Alabama, they would not be entitled to recover. The taxpayers do submit, however, that the decision of the Legislature to require taxation of property in Morgan County and Jefferson County at a higher rate than in the other 65 counties, in the absence of a showing of a rational basis for such classification, was arbitrary and capricious.
In brief, able counsel for one of the appellees states as follows:
 "Many reasons of which the Circuit Court and this Court have judicial knowledge can be conceived that support the action of the legislature in enacting the law involved in this case, a few of which are, as follows:
 "Jefferson County has more than twice the population of any other county in the State; it is the most industrial county in the State; it has wide-spread residential areas requiring protection from fire and *Page 787 
lawlessness; it has an extensive interstate highway system converging in the Birmingham downtown district and extending north, south, east and west from the central city with the resulting removal of much land from the tax rolls; it has a large medical and university center extending over a large area upon land which has been removed from the tax rolls; it is required to provide outfall sanitary sewers to handle the requirements of the population of the County; it is subject to many laws placing special duties and authority on Jefferson County that is not likewise on the same basis, provided for other counties; some of which laws appear in Title 62, Code of Alabama of 1940, Sections 135 to 330, inclusive; Volume 14, Appendix, Code of Alabama, Recompiled 1958, Sections 624 to 1059, inclusive; Volume 14A, Appendix, Code of Alabama, Recompiled 1958, pages 544 to 669, inclusive; and Volume 14B, Appendix, Code of Alabama, Recompiled 1958, pages 846 to 1013, inclusive. In view of the above, it cannot be denied that it has been the policy of the legislature of this state to provide for Jefferson County by laws applicable thereto which are not applicable to the state as a whole. We have been unable to find where any of said laws have been held invalid as denying the equal protection of the laws. These laws and the provision of the law applicable to Jefferson County involved in this case apply to all alike in Jefferson County without discrimination.
 "The above differences between Jefferson County and other counties in this state are differences of which we respectfully submit that this court has judicial knowledge. Certainly they support the requirement of the U.S. Supreme Court cases hereinabove referred to that a state statute applicable to only a part of a state does not violate the equal protection of the laws if any state of facts may be conceived to justify it.
 "It should be noted at this point that Section 40-8-1, CODE OF ALABAMA 1975, will have no future operation since it has been superseded by Amendment 373 to the Alabama Constitution, proclaimed ratified by the Governor on November 20, 1978. The assessment ratios set out in said Amendment 373 are the ones now in effect."
It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality, of negativing every conceivable or reasonable basis which might support the classification, and of showing clearly that the statute is unjustly discriminatory or that the classification is essentially arbitrary or unreasonable. Discrimination is the essence of classification and does violence to the constitution only when the basis of the discrimination is unreasonable. The taxpayers do not meet their burden, therefore, by merely showing that they are taxed at a different rate.
In order to sustain the grant of the motions to dismiss, we would have to take judicial notice that the Legislature had a rational basis upon which to base its classification in this statute. This we cannot do. The taxpayers have alleged that the classification is arbitrary and capricious. They have the burden to prove this, but they are at least entitled to have their day in court. There may be a rational reason why the Legislature selected Jefferson and Morgan Counties for special classification. We do not now hold that there was no rational basis for the legislation, but we would point out that it is difficult for this Court to understand why citizens of Jefferson County should be taxed at a higher rate than citizens of Mobile County and Montgomery County. Why should citizens of Morgan County be taxed at a higher rate than citizens of Madison County? While it is not required, it would be very helpful if the Legislature, when classifying as in this instance would spell out in some specifics, the purpose of the classification. It would aid the Court in the event of an attack upon this statute in determining what the legislative intent was. In any event, whether the classification is valid or invalid should be determined after a full presentation of evidence, with the burdens resting upon the parties as hereinabove enumerated. *Page 788 
The taxpayers also claimed that the trial court erred in refusing to permit their suit to be maintained as a class action. While § 40-10-160, Code 1975, sets forth a statutory procedure for the refund of ad valorem taxes, the taxpayers contend they did not have to pursue that statutory remedy because they claimed that the assessment was void and illegal. We agree with the taxpayers. In Graves v. McDonough, 264 Ala. 407, 88 So.2d 371 (1956), this Court held that the statutory procedure for refund of taxes does not apply where the assessment complained of is void and illegal. There, this Court held:
 "[The statute] [b]eing void, the taxpayer was not required to pursue any certain remedy to get it so declared and obtain a refund. `The necessity for pursuing the statutory remedy does not exist where the assessment complained of is void and illegal.' 84 C.J.S. Taxation, § 513, Note 90."
Taxpayers also rely on Shanks v. Winkler, 210 Ala. 101,97 So. 142 (1923), which held, under the statutory remedy for a refund of taxes, a class action was a permissible vehicle to restrain the enforcement of an invalid tax. While the Shanks
case did not discuss the question of the recovery of previously collected taxes, this Court did hold that the taxpayers could maintain the class action.
We hold that a class action was a proper remedy for the recovery of any taxes which were paid illegally, but we limit that recovery to the two taxable years next preceding the filing of the complaint. This limitation on recovery would correspond to the statutory scheme which requires that a taxpayer seek a refund within two years. §§ 40-10-160 166, Code 1975.
The cause is due to be reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, SHORES and BEATTY, JJ., concur.
BLOODWORTH, ALMON and EMBRY, JJ., concur specially.
TORBERT, C.J., and FAULKNER, J., dissent.
[1] Section 40-8-1 (e) reads as follows:
In the following designated counties taxable property shall be assessed at the ratio of assessed value to fair and reasonable market value for each class of property at the rate indicated:
County Class I Class II Class III — ---- ------- -------- ---------
Morgan 30% 20% 20% Limestone 30% 20% 15% Etowah 30% 20% 15% Clay 30% 20% 15% Cleburne 30% 20% 15% Barbour 30% 15% 15% Coffee 30% 15% 15% Bullock 30% 15% 15% Hale 30% 15% 15% Wilcox 30% 15% 15% Monroe 30% 15% 15% Randolph 30% 15% 15% Perry 30% 15% 15% Bibb 30% 15% 15% Houston 30% 15% 15% Dale 30% 15% 15% Henry 30% 15% 15% Jefferson 30% 25% 20% Calhoun 30% 25% 15%