Violet Mary McCARTHY, suing by and through her next friend Charles J. McCarthy, Jr., Harold D. Threadgill and Anthony Threadgill, suing by and through their next friend Thomas L. Threadgill, Renee McCaskill, suing by and through her next friend Chester McCaskill, Jesse Max Brooks, suing by and through his next friend J. N. Brooks, Sharon R. Montgomery, suing by and through her next friend Eloise T. Montgomery, Gary O'Neil Pettway, Henry Aaron Pettway, and Melvin Pettway, suing by and through their next friend Willie Quill Pettway, Ida Mae Johnson, suing by and through her next friend Dave Johnson, and Ethene Delores Johnson, suing by and through her next friend Jack Johnson, for themselves and all others similarly situated, Plaintiffs,

v.

Robert G. JONES, Individually, as Tax Assessor of Wilcox County, and on behalf of the class of tax assessors similarly situated, and L. Cecil Gaston, Individually, as Tax Collector of Wilcox County, and on behalf of the class of tax collectors similarly situated, (Additional defendants added as per attached Exhibit A) Defendants.

Civ. A. No. 77-242-H.

United States District Court, S. D. Alabama, N. D.

April 21, 1978.

Edward Still, Birmingham, Ala., for plaintiffs, Violet Mary McCarthy, et al.

Andrew M. Cromer, Jr., Camden, Ala., for Robert G. Jones, Tax Assessor of Wilcox County and for L. Cecil Gaston, Tax Collector of Wilcox County.

David U. Patton, Athens, Ala., for Edward Christopher and James Hargrove of Limestone County.

Kirtley W. Brown, Marion, Ala., for Wayne Perkins and Paul Stone of Perry County.

Michael E. Gurley, Centreville, Ala., for E. C. Downs of Bibb County.

Windwell C. Owens, Monroeville, Ala., for James L. Witherington of Monroe County.

Richard H. Ramsey, III, Dothan, Ala., for John L. Napier of Houston County.

David B. Carnes and Jack Floyd, Gadsden, Ala., for Jerry B. Jones and Opal N. Lee of Etowah County.

C. W. Rowe, Elba, Ala., for Maxwell A. Reeves and Fred L. Donaldson of Coffee County.

Julian Harris, Decatur, Ala., for Porter L. Hanes, Charles Howard and Cleon Yates of Morgan County.

Joseph W. Adams and Henry B. Steagall, III, Ozark, Ala., for W. J. Knight and James F. Watson of Dale County.

J. Gorman Houston, Jr., Eufaula, Ala., for Jena Shirley and Robert G. Methvin of Barbour County.

T. R. Ward, Abbeville, Ala., for Dan F. Capps and Madge Fleming of Henry County.

Lewis B. Hammer, Jr., Roanoke, Ala., for Bill Kirby and Herman Landers of Randolph County.

Lon Dick, pro se.

Earnest Allen Ingram, pro se.

G. Sage Lyons, Mobile, Ala., and Robert A. Huffaker, Montgomery, Ala., for amicus curiae, Ala. Farm Bureau Fed., Ala. Cattlemen's Assoc. and Ala. Assoc. of Realtors.

HAND, District Judge.

On February 17, 1978 the plaintiffs filed a motion for summary judgment averring that "there is no genuine issue as to any material fact and that the plaintiffs are entitled to a judgment as a matter of law." All defendants had previously been informed, by a notice dated February 10, 1978, that the Court would hold a hearing on this case on all pending matters on March 13, 1978. In response to this notice, counsel for the Bibb, Coffee, Dale and Hale County defendants appeared, and counsel for the Perry County defendants received an extension of time until March 24, 1978 to appear. Counsel for the Wilcox County defendants informed the Court that they did not wish to oppose the motion for summary judgment. None of the other defendants were represented at the hearing and none informed the Court as to their reasons for not being present. In spite of their absence, the Court finds that such defendants were afforded notice and an opportunity to be heard on the motion, and therefore will proceed to consider the issues without benefit of the arguments of such defendants. The Court has considered the record in this matter, the memoranda of law and oral arguments propounded by counsel for all parties, the brief of Amicus Curiae, together with the applicable law, and finds as follows:

## FINDINGS OF FACT

1. The plaintiffs herein are a class composed of 77,000 school children residing

within the following counties in the State of Alabama: Barbour, Bibb, Bullock, Clay, Cleburne, Coffee, Dale, Etowah, Hale, Henry, Houston, Limestone, Monroe, Morgan, Perry, Randolph, and Wilcox. The named plaintiffs are seeking declaratory relief finding that Title 51, § 17 of the *Alabama Code* of 1940 (now section 40–8–1 of the *Alabama Code* of 1975) violates both the state and federal constitutions, and that Amendment 325(c) to the Alabama Constitution is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution. The plaintiffs further request that the defendants be enjoined from enforcing, either through collection or assessment, section 40–8–1 of the *Alabama Code*, and that the plaintiffs recover their costs of action and a reasonable attorney's fee. The defendants herein are the tax assessors and the tax collectors in the counties in which the plaintiff class members reside.

2. Section 40–8–1 of the *Alabama Code* of 1975 provides, in pertinent part, that:

(e) In the following designated counties taxable property shall be assessed at the ratio of assessed value to fair and reasonable market value for each class of property at the rate indicated:

| County | Class I | Class II | Class III |
|---|---|---|---|
| Morgan | 30% | 20% | 20% |
| Limestone | 30% | 20% | 15% |
| Etowah | 30% | 20% | 15% |
| Clay | 30% | 20% | 15% |
| Cleburne | 30% | 20% | 15% |
| Barbour | 30% | 15% | 15% |
| Coffee | 30% | 15% | 15% |
| Bullock | 30% | 15% | 15% |
| Hale | 30% | 15% | 15% |
| Wilcox | 30% | 15% | 15% |
| Monroe | 30% | 15% | 15% |
| Randolph | 30% | 15% | 15% |
| Perry | 30% | 15% | 15% |
| Bibb | 30% | 15% | 15% |

| County | Class I | Class II | Class III |
|---|---|---|---|
| Houston | 30% | 15% | 15% |
| Dale | 30% | 15% | 15% |
| Henry | 30% | 15% | 15% |
| Jefferson | 30% | 25% | 20% |
| Calhoun | 30% | 25% | 15% |

The rates of assessment in Jefferson and Calhoun counties are not at issue in this litigation since the Jefferson rates exceed the statutory rates for other counties and the Calhoun rates are equal to such statutory rates. The Court finds that as a result of this statutory assessment scheme the seventeen counties involved in this litigation have a lower property value upon which tax rates may be applied than would be available if the counties employed the state wide assessment rates set out in section 40–8–1(a).[1]

3. The plaintiffs also question the validity of Amendment 325(c) to the Alabama Constitution, contending that this legislative formulation is abhorrent to the equal protection clause of the Fourteenth Amendment to the United States Constitution. Amendment 325(c) provides, in pertinent part, that:

With respect ad valorem taxes levied by counties . . . all taxable property shall be forever taxed at the same rate, and such property shall be assessed for ad valorem purposes according to the classes of property defined in paragraph (a) herein and at the same ratios of assessed value to the fair and reasonable market value thereof as fixed in paragraph (b) herein, provided, however, that the legislature may vary the ratio of assessed value to the fair and reasonable market value as to any class of property defined in paragraph (b) herein, and provided, further, that the legislature may fix a uniform rate of assessment of all

1. The Alabama Farm Bureau Federation, the Alabama Cattlemen's Association, Inc., and the Alabama Association of Realtors have appeared in this litigation collectively as an amicus curiae. On this particular finding they take issue, arguing that while the lower assessment rates will obviously result in lower revenues than would be provided by the statewide rates, such revenues may be increased through an increase in the millage rates. The Court is convinced that this is true, but such explana-

tion does little in the way of justifying the distinctions in assessment rates in the various counties. There has not been, nor can there be, allegations that municipal governments violate the Fourteenth Amendment. The Court here is concerned only with a state statutory scheme that sets out the amount of property subject to taxation. Clearly there is no constitutional proscription against the adoption of different rates of taxation by the various local governmental units.

property within a county defined in paragraph (a) herein as Class II and III and may fix a different ratio of assessment for property defined in paragraph (a) as Class I. Such ratios as herein authorized may vary among counties so long as each such ratio is uniform within a county.

.  .  .

The Court finds that the effect of Amendment 325(c) to the Alabama Constitution is to allow the state legislature to create distinctions in the rate of assessment of similar property in different counties, and that, in the instant case, such authorization has been employed to create such distinctions based on nothing other than geographical location.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of this action and the parties hereto by virtue of Title 28, U.S.C.A., §§ 1331 and 1343, and Title 42, U.S.C.A., § 1983. The Court is of the opinion that the named plaintiffs are proper class representatives and that a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure is a proper vehicle for presentation of the plaintiffs' claims herein. However, the Court concludes that there is no need for class treatment of the defendants herein, since there is no evidence that such defendants are so numerous as to make joinder impractical, as required by Rule 23(a).

2. It should first be noted that the plaintiffs here do not contest the state's right to establish different classes of property for taxation and assessment purposes. As the Court in *Weissinger v. Boswell*, 330 F.Supp. 615, 620 (M.D.Ala.1971) (three judge panel) noted: "The sole question presented in this case  .  .  .  is whether a state has the right to assess property *in the same class* at different ratios." (emphasis in the original). While the precise issue before this Court is the validity of county assessments as opposed to the state assessments confronting the *Weissinger* court, this Court is convinced that the constitutional questions in each case are analogous and that *Weissinger* is dispositive of most issues raised herein.

3. Turning first to the contention that section 40–8–1 violated the equal protection clause of the Fourteenth Amendment, the Court finds that the *Weissinger* court's language is particularly appropriate:

It is well established that the states have wide discretion in the laying and collecting of their taxes. The law is equally clear, however, that such discretion cannot be exercised so as to arbitrarily deprive persons of their constitutional rights. So, while the Fourteenth Amendment does not require precise equality or uniformity in taxation, or prohibit inequality in taxation which results from mere mistake or error in judgment of tax officials, it does "secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Stated differently, the Fourteenth Amendment protects only against taxation which is palpably arbitrary or grossly unequal in its application to the persons concerned.

330 F.Supp. at 621–622 (footnotes omitted). Thus the constitutional test that is to be applied to the statute in controversy is whether the disparity in rates of assessment among the various counties results in taxation that "is palpably arbitrary or grossly unequal in its application."

Having acknowledged that the statutory scheme at issue permits and enforces the assessment of property of the same class at different ratios in different counties, the Court must next consider whether there is any legitimate state object in making such distinctions. The distinctions drawn by the statute are geographical, since the rates at issue are applicable to seventeen different Alabama counties. *Salsburg v. Maryland*, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954), noted by the *Weissinger* court, makes it clear that distinctions based on geographical lines are not per se unconstitutional, but there must be some showing "that the classification is neither

capricious nor arbitrary but rests upon some reasonable consideration of difference or policy." *Weissinger v. Boswell*, 330 F.Supp. at 623, *citing State Board of Tax Commissioners of Indiana v. Jackson*, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248 (1931). Although the Court has received diverse answers and motions for summary judgment or dismissal from almost every one of the thirty-four defendants, together with an amicus curiae brief from various state associations, no one has yet taken the position that there is a legitimate state object supporting the enforcement of section 40–8–1. The Court is of the opinion that such a position could hardly be advanced under the state of the facts as presented. There is no rational pattern tying together the seventeen counties with decreased assessment ratios. The Court takes judicial notice that many sparsely populated, rural counties are on the list, such as Bullock, Hale, Wilcox, Perry, and Bibb counties. But there are other counties on the list that contain some of the larger municipalities within the state, such as Morgan (Decatur), Etowah (Gadsden), Barbour (Eufala) and Houston (Dothan). Certainly there is no urban/rural dichotomy objective. Nor is there a geographical objective, since the list includes counties in every area of the state; some are contiguous, some are not. Facially, there is clearly no geographical justification for the statutory scheme. The Court is of the opinion that the statutory scheme at issue is totally without a rational basis in making distinctions between the ratios of assessment of ad valorem taxes in various counties, and that, on this basis, the statute is repugnant to the Fourteenth Amendment to the United States

Constitution.[2] Having resolved this question on federal grounds, the Court does not reach the issue whether the passage of the Act violated the Alabama Constitution.

4. The plaintiffs next contend that Amendment 325(c) to the Alabama Constitution, the provision under which the above-discussed statute was enacted, violates the equal protection clause of the Fourteenth Amendment to the extent that it authorized the legislature to "vary the ratio of assessed value to the fair and reasonable market value as to any class of property." The *Weissinger* decision is of little aid on this point for it appears, as the plaintiffs allege, that the Amendment was passed in response to the *Weissinger* decision.

The Court starts here, as it did above with respect to section 40–8–1, with the proposition that the Fourteenth Amendment precludes distinctions between the various counties that are not, as the *Weissinger* court stated, based upon "some reasonable consideration of difference or policy." 330 F.Supp. at 623. Amendment 325(c) allows the state legislature to vary the ratio of assessment among various counties and the Court has today concluded that the state, in enforcing section 40–8–1 pursuant to the authority granted by Amendment 325(c), has run afoul of the prohibitions against denial of equal protection contained in the Fourteenth Amendment of the United States Constitution. The Court is convinced, however, that such a conclusion does invalidate the enabling law. This Court does not subscribe to the theory that the fact that a statutory scheme is unconstitutional serves to invalidate the enabling legislation under which it

2. The Amicus Curiae brief places great emphasis on the fact that no invidious discrimination could possibly result from the distinction in assessment rates, since the counties and municipalities, as noted in footnote 1, *supra*, are free to adjust their millage rates to increase or decrease revenue. The contention is that the statute must stand in the absence of proof of such discrimination. However, this Court is convinced, as apparently was the three judge panel in *Weissinger*, 330 F.Supp. at 623, that upon a showing that a statutory scheme does not technically comport with the guarantees of

equal protection, a presumption of invalidity arises and the burden is shifted to the state to establish its interest in creating statutory distinctions. Here absolutely no state interest has been shown, so the Court is compelled to enforce the presumption of invalidity and find the statutory scheme unconstitutional. It should be noted that the discrimination here lies not in the result to the taxpayers, whose tax bill can be manipulated by legislation by local government units, but rather in the statutory scheme itself, since it is wholly arbitrary.

was adopted. The Court is convinced that a statutory scheme allowing variations in the assessment ratios in different counties grounded upon a legitimate and rational state interest would not be violative of the Fourteenth Amendment. Since the Court is convinced that the Amendment itself permits the adoption of valid legislation, the Court is of the opinion that the relief requested as to the Amendment is due to be DENIED.

APPENDIX A