375 So.2d 780 (1979)
Wayne THORN et al.
v.
JEFFERSON COUNTY et al.
Charles CLARKSON, a general partner in Old Mountain Properties, a partnership, et al.
v.
JEFFERSON COUNTY et al.
78-286, 78-287.
Supreme Court of Alabama.
September 7, 1979.
Rehearing Denied September 28, 1979.
John W. Haley, of Noojin, Haley & Ashford, Birmingham, for appellants.
Edwin A. Strickland, and John S. Foster, Birmingham, for appellee, Jefferson County.
*781 Donald B. Sweeney, Jr., Birmingham, for appellee, Jefferson County Bd. of Ed.
Hobart A. McWhorter, Jr., Birmingham, for appellee, City of Birmingham.
William G. Somerville, Jr., Birmingham, for appellees, City of Birmingham Bd. of Ed. and City of Mountain Brook Bd. of Ed.
J. M. Breckenridge, Birmingham, for appellee, City of Mountain Brook.
J. Howard McEniry, Jr., Bessemer, for appellees, the City of Bessemer, City of Hueytown and the Bessemer Bd. of Ed.
John W. Williams, Jr., Birmingham, for appellee, City of Homewood.
Jack H. Harrison, of Harrison, Jackson & Lee, Birmingham, for appellee, the City of Hoover.
Irvine C. Porter and James W. Porter, II, Birmingham, for appellees, City of Irondale and City of Homewood.
Patrick H. Boone, Birmingham, for appellees, City of Vestavia Hills and Bd. of Ed. of Vestavia Hills.
MADDOX, Justice.
Can the Legislature require citizens in Jefferson County to pay a higher rate of ad valorem tax on the same class of property than citizens in other counties of the state are required to pay? We hold that, based on the material before us, we cannot find, as a matter of law, that the classification made by the Legislature is rational. We reverse and remand.
Plaintiffs, as taxpayers, brought a class suit to recover what they claim were "excess taxes" paid to the Jefferson County Tax Collector based upon the assessment ratios provided for in Title 51, § 17, Code of Ala. 1940 (Recompiled 1958), now § 40-8-1, Code 1975. They claimed that the levy of taxes based upon § 40-8-1, Code 1975, is unconstitutional because it constitutes a denial of equal protection and violates the Fourteenth Amendment to the Constitution of the United States in that they were required to pay ad valorem taxes to the Jefferson County Tax Collector on Class III based upon an assessment rate of 20% of the market value of the property while taxpayers in other counties were required to pay only at the rate of 15% of the market value of the property. In a final order granting the defendants' motions to dismiss, denying the plaintiffs' motion for partial summary judgment, the trial court opined:
"Plaintiffs' motion for partial summary judgment seeks a declaration that Section 40-8-1(e), Code of Alabama 1975 (and its predecessor, Tit. 51, § 17(5), Ala.Code 1940, as amended), is unconstitutional on its face, there being no issue as to any material fact with respect to that claim, thus entitling plaintiffs to judgment as a matter of law. In raising the constitutionality vel non of Section 40-8-1(e), plaintiffs submit no supporting affidavits or other evidence or testimony as provided by Rule 56, as plaintiffs contend that the question is solely a matter of law and should be considered as such. In the memorandum brief filed by plaintiffs they observe that Section 40-8-1(e) provides for an assessment for municipal and county tax purposes of fifteen percent (15%) of all Class III property in all counties except Jefferson and Morgan which provides for a twenty percent (20%) assessment, and claim that there is no rational basis for this distinction in assessment rates, and that the distinction `demonstrates a patent denial of equal protection in that residents of Jefferson County ... who own Class III property are not being treated equally with other Class III taxpayers'. Plaintiffs make the claim, unsupported by any facts or evidence, that this distinction constitutes a denial of equal protection and violation of the Fourteenth Amendment to the United States Constitution.
"The plaintiffs contend that Section 40-8-1(e), Code of Alabama 1975, and its predecessor Section 17(5), Title 51, Code of Alabama of 1940, as amended, violate the equal protection of the laws provision of the Federal Constitution. The plaintiffs thusly state the theory of such contention:
"`The statutory scheme at issue permits and compels the assessment of property *782 of the same class at different ratios in different counties.' (First sentence in last paragraph on page 3 of plaintiffs' brief).
"To sustain such theory the plaintiffs rely on Weissinger vs. Boswell, D.C., 330 F.Supp. 615, herein called `Weissinger'.
"The Court agrees with the defendants that Weissinger does not hold that the equal protection of the laws clause of the Federal Constitution prohibits the assessment for municipal and county taxation of property of the same class at different ratios in different counties. Footnote 1 to the opinion in McCarthy v. Jones, [D.C.] 449 F.Supp. 480, decided subsequent to Weissinger and after the adoption of Amendment 325 to the Alabama Constitution says this:
"`Clearly there is no constitutional proscription against the adoption of different rates of taxation by the various local governmental units.' (emphasis added)
"By the sentence next quoted above, the Court in McCarthy repudiated the principle for which the plaintiffs cite Weissinger. Court decisions, legal encyclopedias and preeminent text writers sustain such repudiation.
"`On the other hand, taxes in different taxing districts in the state need not be uniform, where they are equal and uniform throughout the district for which the tax is levied. For instance, a county tax in one county may be based on a higher valuation or a higher rate than in another county.' (underscoring supplied) 1 Cooley's Law of Taxation (4th Ed.), pp. 649 and 650.
"`It does not mean, however, that the taxes levied by or with respect to the various political subdivisions or taxing districts of the state must be at the same rate.'" (Underscoring supplied) 71 Am. Jur.2d 472, § 152 of State and Local Taxes.
"`Hence, there may be different rates of local taxation in such different subdivisions, provided there is uniformity within each particular county, municipality, or taxing district, and provided the purpose to be accomplished by the tax pertains to the district taxed, as discussed infra subdivision b of this section.' (Underscoring supplied) 84 C.J.S. 128, et seq., Section 38 of Taxation.
"Plaintiffs rely principally on the decision of the United States District Court for the Southern District of Alabama in McCarthy v. Jones, 449 F.Supp. 480 (1978). In McCarthy the District Court held that the application of Section 40-8-1(e) to seventeen counties involved in the case with respect to the assessment of Class II property at different rates so as to reduce assessment ratios as therein provided violated the equal protection clause of the Fourteenth Amendment to the United States Constitution as to the school of children who were plaintiffs in that case. The Court expressly held that the rates of assessment for county and municipal taxation in Jefferson County [were] not an issue in the litigation since the Jefferson County rates (as to Class III property) exceed the statutory rates for other counties. In McCarthy, the Court did hold that Amendment 325 to the Alabama Constitution was valid and that an assessment ratio in a county different from the assessment ratio in other counties could in a proper case be established by the Legislature.
"Section 1-1-16, Code of Alabama 1975, and Section 2 of Act No. 1216 of the 1973 Regular Session of the Legislature (Acts 1973, p. 2062), which act amended Title 51, Section 17(5), Code of Alabama 1940, each provide a severability clause which authorizes the Court to consider Section 40-8-1(e) (and its predecessor, Tit. 51, § 17(5), Ala.Code 1940, as amended) as they apply to Jefferson County alone, unaffected by provisions applicable to other counties. The United States Supreme Court has held that the equal protection clause of the United States Constitution relates to equality between persons rather than between areas. Salsburg v. State of Maryland, 346 U.S. 545, [74 S.Ct. 280, 98 L.Ed. 281] (1954); McGowan v. State of Maryland, 366 U.S. 420, [81 S.Ct. 1101, 6 L.Ed.2d 393] (1961); Toyota v. Hawaii, 226 U.S. 184, [33 S.Ct. 47, 57 L.Ed. *783 180] (1912). The Supreme Court of the United States has held that State legislatures are presumed to have acted within their constitutional power despite the fact that in practice, their laws result in some inequality and that a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. McGowan v. Maryland, supra; Allied Stores of Ohio v. Bowers, 358 U.S. 522, [79 S.Ct. 437, 3 L.Ed.2d 480] (1959).
"The Alabama Supreme Court and the Court of Civil Appeals have held as valid laws relating to assessment of property in Jefferson County different from similar laws relating to most other counties in the State. Phillips v. Hinkle, 262 Ala. 330, 78 So.2d 800 (1955); Smith v. Pullman, Inc., 280 Ala. 295, 193 So.2d 516 (1966); State v. Kennedy, 52 Ala.App. 470, 294 So.2d 439 (1974).
"After consideration of the pleadings, arguments of counsel, and the authorities submitted by counsel, the Court is of the opinion and finds that the provisions of Section 40-8-1(e), Code of Alabama 1975, and of Tit. 51, § 17(5), Ala.Code 1940, as amended, separately and severally, providing that in Jefferson County taxable property shall be assessed for municipal and county taxation at the ratio of assessed value to fair and reasonable market value as to Class III property at twenty percent (20%), does not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution, nor is invalid as being repugnant to the provisions of the Constitution of Alabama, or for any other reason alleged in the complaint as last amended. The Court accordingly further finds plaintiffs' motion for partial summary judgment is due to be denied. The Court deems and finds plaintiffs' claim with respect to the alleged patent invalidity of Section 40-8-1(e), Code of Alabama 1975, to be the sole claim upon which plaintiffs seek relief."
Section 40-8-1(e), Code 1975, provides, on its face that Class III property in Jefferson and Morgan Counties will be taxed at a different rate than Class III property in other counties.[1] The plaintiffs maintain that there is no rational basis for the distinction in assessment rates and that it is an arbitrary and grossly unequal application of the law.
The constitutional and statutory scheme for taxing property in Alabama has generated a substantial amount of concern and controversy over the past two or three decades. These disputes have been precipitated principally because of the failure of the Legislature and the taxing authorities to follow the mandates of the Constitution of 1901, which specifically provided for equality and ad valorem taxation. For example, § 211 and § 217 of the Constitution of 1901, provided, as follows:
"Sec. 211. Property taxes to be assessed in exact proportion to value of property.
"All taxes levied on property in this state shall be assessed in exact proportion to the value of such property, ...
* * * * * *
"Sec. 217. Property of private corporations, associations and individuals to be taxed at same rate; exception as to *784 religious, educational and charitable property.
"The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate;. . ."
The appellate courts of this state have interpreted these sections of the Constitution to mean that all property must be taxed at uniform ratios for ad valorem purposes. State of Alabama v. Alabama Power Co., 254 Ala. 327, 48 So.2d 445 (1950); Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183 (1948); State of Alabama v. Murphy, 45 Ala.App. 637, 235 So.2d 888 (1970).
In fact, this Court specifically said in the Alabama Power Company case, supra, that the intent manifested by § 211 and § 217 was, as follows:
". . . It can hardly be contended that after all these years of constitutional history there is a power to classify land and personal property of one taxpayer and tax it on a different basis from the land and personal property of others in the face of §§ 211 and 217."
Nevertheless, neither the Legislature nor the taxing authorities varied their taxing schemes. The inevitable happened in 1971, when a class action was filed in federal court, in which the plaintiffs alleged that the intentional and systematic refusal of state taxing officials to perform their duties in accordance with state law had denied them equal protection of the law under Amendment 14 to the Federal Constitution. A three-judge Federal District Court, noting that this Court had held that Alabama's own constitution had been interpreted as requiring "`uniformity and equality among all taxpayers, private corporations, associations and individuals alike', both as to ratio and percentage of taxation and also as to rate of taxation," declared Alabama's statutory scheme violated not only the Alabama Constitution, but also the Federal Constitution as well. Weissinger v. Boswell, 330 F.Supp. 615 (M.D.Ala.1971).
Alabama's answer to Weissinger was Amendment 325 which amended Section 217 of the 1901 Constitution to change the uniformity and equality among taxpayers to provide for three classes of property and to establish three different ratios of taxation for the three separate classes. The Legislature, in turn, enacted the statute under attack now, § 40-8-1(e).
It is apparent on the face of the statute that the Legislature has attempted to establish a class [specified counties] within a class [Class III property] by varying the assessment ratios between counties insofar as both Class II and Class III property are concerned.
As to Class II property, § 40-8-1(e) has already been declared unconstitutional by a Federal District Court in McCarthy v. Jones, 449 F.Supp. 480 (S.D.Ala.1978).
The Court, in McCarthy had to determine the identical constitutional question presented by the plaintiffs here. That Court framed the issue:
"The named Plaintiffs are seeking declaratory relief finding that Title 51, Section 17 of the Alabama Code of 1940 (now Section 40-8-1 of the Alabama Code of 1975) violates both the state and federal constitutions, and that Amendment 325(c) to the Alabama Constitution is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution."
The Federal District Court resolved the issue on plaintiffs' Motion for Summary Judgment in the McCarthy case by entering an order declaring § 40-8-1(e) to be unconstitutional as repugnant to the provisions of the Fourteenth Amendment.
The McCarthy Court made the following finding:
"Having acknowledged that the statutory scheme at issue permits and enforces the assessment of property of the same class at different ratios in different counties, the Court must next consider whether there is any legitimate state object in making such distinctions. The distinctions drawn by the statute are geographical, since the rates at issue are applicable to seventeen different Alabama counties. Salsburg v. Maryland, 346 U.S. 545, 74 *785 S.Ct. 280, 98 L.Ed. 281 (1954), noted by the Weissinger court, makes it clear that distinctions based on geographical lines are not per se unconstitutional, but there must be some showing `that the classification is neither capricious nor arbitrary but rests upon some reasonable consideration of difference or policy.' Weissinger v. Boswell, 330 F.Supp. at 623, citing State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248 (1931). Although the Court has received diverse answers and motions for summary judgment or dismissal from almost every one of the thirty-four defendants, together with an amicus curiae brief from various state associations, no one has yet taken the position that there is a legitimate state object supporting the enforcement of section 40-8-1. The Court is of the opinion that such a position could hardly be advanced under the state of the facts as presented. There is no rational pattern tying together the seventeen counties with decreased assessment ratios. The Court takes judicial notice that many sparsely populated, rural counties are on the list, such as Bullock, Hale, Wilcox, Perry, and Bibb counties. But there are other counties on the list that contain some of the larger municipalities within the state, such as Morgan (Decatur), Etowah (Gadsden), Barbour (Eufaula) and Houston (Dothan). Certainly there is no urban/rural dichotomy objective. Nor is there a geographical objective, since the list includes counties in every area of the state; some are contiguous, some are not. Facially, there is clearly no geographical justification for the statutory scheme. The Court is of the opinion that the statutory scheme at issue is totally without a rational basis in making distinctions between the ratios of assessment of ad valorem taxes in various counties, and that, on this basis, the statute is repugnant to the Fourteenth Amendment to the United States Constitution. Having resolved this question on federal grounds, the Court does not reach the issue whether the passage of the Act violated the Alabama Constitution."
The result reached in McCarthy followed a principle previously enunciated in Weissinger, where the Court stated:
"Even if the State of Alabama were permitted by its own Constitution and laws to classify property for tax purposes, it is clear that its present ad valorem tax program still would not comport with the stringent requirements of the Federal Constitution. While distinctions based on geographical areas are not, in and of themselves, violative of the Fourteenth Amendment, Salsburg v. Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954), a state must demonstrate, if it wishes to establish different classes of property based upon different geographical localities e. g, rural areas as opposed to urban areasthat the classification is neither capricious nor arbitrary but rests upon some reasonable consideration of difference or policy. State Board of Tax Comm'rs of Indiana v. Jackson, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248 (1931). Such a showing has not been made in this case.
"Defendant has, for example, offered no explanation in an attempt to justify or explain why an urban area like Jefferson County assesses property at a higher percentage (26.8%) of actual cash value than does a rural area like Elmore County (9.7%), while at the same time an area like Dallas County with one municipality of substantial sizeSelmaassesses property at a higher percentage (23.1%) of fair market value than does a similar area like Montgomery County (15.5%), which also has only one municipality of a substantial size. Nor has any evidence been submitted to explain why property in Dale County is assessed at 19.1 percent of fair market value, while property in neighboring Coffee and Geneva Counties is assessed at 13.5 and 9.2 percent of actual cash value.
"Being unable to find any legitimate state objective to be served by the vast disparity which presently exists in Alabama's ad valorem tax program, this *786 Court is forced to conclude that the variation in percentages, as between geographical areas of the state, results in the arbitrary classification of taxable property and therefore violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment."
Following the McCarthy decision, the Attorney General of Alabama was requested to give an opinion on the validity of Section 40-8-1(e) and was specifically asked:
"1. Does the decision of the Court in McCarthy, et al. v. Jones, et al., 449 F.Supp. 480 (D.C.Ala.1978), require assessment of all Class II property at 25% of fair market value and all Class III property at 15% of fair market value?" The Attorney General answered this question in the affirmative on May 25, 1978. The opinion states:
"The Court in the Violet Mary McCarthy case, supra, held that the last subsection of Code of Alabama 1975, Section 40-8-1, was unconstitutional, being repugnant to the Fourteenth Amendment to the United States Constitution in that it provided for variations in assessment ratios in different counties based on nothing other than geographical location, there being no rational pattern or basis for such variation. Since the statute itself and not merely the manner of its enforcement was held to be unconstitutional, subsection (5) or (e) is void ab initio and cannot be relied upon for any tax year. Norwood v. Goldsmith, 168 Ala. 224, 53 So. 84, see also 16 C.J.S. Constitutional Law 474 ff. Hence, 1978 taxes must be assessed and collected on the basis of Code of Alabama 1975, Section 40-8-1(a) through Section 40-8-1(d), which provide for assessment of all Class II property at 25% and Class III property at 15% of fair market value."
Following the decision in McCarthy and the Attorney General's opinion, the assessment ratio of property in both Jefferson and Morgan Counties was voluntarily reduced from 20% to 15% of market value.
We are aware of the principle that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). We are also conscious that the Supreme Court of the United States held that a statute must be held constitutional in light of the Equal Protection Clause of the Fourteenth Amendment, if any state of facts can be conceived that would sustain it. Allied Stores of Ohio v. Bowers, 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480, 486 (1959).
We are also mindful that a statutory discrimination should not be set aside if any state of facts reasonably may be conceived to justify it. McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
The taxpayers recognize and admit that the Equal Protection Clause of the United States Constitution and the decisions in Weissinger and McCarthy do not require that the assessment rates of Class III property must be uniform across the State of Alabama. They candidly admit that if the Alabama Legislature has some reasonable consideration of difference or policy in taxing Class III property in Morgan and Jefferson Counties at different rates than the other 65 counties in the State of Alabama, they would not be entitled to recover. The taxpayers do submit, however, that the decision of the Legislature to require taxation of property in Morgan County and Jefferson County at a higher rate than in the other 65 counties, in the absence of a showing of a rational basis for such classification, was arbitrary and capricious.
In brief, able counsel for one of the appellees states as follows:
"Many reasons of which the Circuit Court and this Court have judicial knowledge can be conceived that support the action of the legislature in enacting the law involved in this case, a few of which are, as follows:
"Jefferson County has more than twice the population of any other county in the State; it is the most industrial county in the State; it has wide-spread residential areas requiring protection from fire and *787 lawlessness; it has an extensive interstate highway system converging in the Birmingham downtown district and extending north, south, east and west from the central city with the resulting removal of much land from the tax rolls; it has a large medical and university center extending over a large area upon land which has been removed from the tax rolls; it is required to provide outfall sanitary sewers to handle the requirements of the population of the County; it is subject to many laws placing special duties and authority on Jefferson County that is not likewise on the same basis, provided for other counties; some of which laws appear in Title 62, Code of Alabama of 1940, Sections 135 to 330, inclusive; Volume 14, Appendix, Code of Alabama, Recompiled 1958, Sections 624 to 1059, inclusive; Volume 14A, Appendix, Code of Alabama, Recompiled 1958, pages 544 to 669, inclusive; and Volume 14B, Appendix, Code of Alabama, Recompiled 1958, pages 846 to 1013, inclusive. In view of the above, it cannot be denied that it has been the policy of the legislature of this state to provide for Jefferson County by laws applicable thereto which are not applicable to the state as a whole. We have been unable to find where any of said laws have been held invalid as denying the equal protection of the laws. These laws and the provision of the law applicable to Jefferson County involved in this case apply to all alike in Jefferson County without discrimination.
"The above differences between Jefferson County and other counties in this state are differences of which we respectfully submit that this court has judicial knowledge. Certainly they support the requirement of the U. S. Supreme Court cases hereinabove referred to that a state statute applicable to only a part of a state does not violate the equal protection of the laws if any state of facts may be conceived to justify it.
"It should be noted at this point that Section 40-8-1, CODE OF ALABAMA 1975, will have no future operation since it has been superseded by Amendment 373 to the Alabama Constitution, proclaimed ratified by the Governor on November 20, 1978. The assessment ratios set out in said Amendment 373 are the ones now in effect."
It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality, of negativing every conceivable or reasonable basis which might support the classification, and of showing clearly that the statute is unjustly discriminatory or that the classification is essentially arbitrary or unreasonable. Discrimination is the essence of classification and does violence to the constitution only when the basis of the discrimination is unreasonable. The taxpayers do not meet their burden, therefore, by merely showing that they are taxed at a different rate.
In order to sustain the grant of the motions to dismiss, we would have to take judicial notice that the Legislature had a rational basis upon which to base its classification in this statute. This we cannot do. The taxpayers have alleged that the classification is arbitrary and capricious. They have the burden to prove this, but they are at least entitled to have their day in court. There may be a rational reason why the Legislature selected Jefferson and Morgan Counties for special classification. We do not now hold that there was no rational basis for the legislation, but we would point out that it is difficult for this Court to understand why citizens of Jefferson County should be taxed at a higher rate than citizens of Mobile County and Montgomery County. Why should citizens of Morgan County be taxed at a higher rate than citizens of Madison County? While it is not required, it would be very helpful if the Legislature, when classifying as in this instance would spell out in some specifics, the purpose of the classification. It would aid the Court in the event of an attack upon this statute in determining what the legislative intent was. In any event, whether the classification is valid or invalid should be determined after a full presentation of evidence, with the burdens resting upon the parties as hereinabove enumerated.
*788 The taxpayers also claimed that the trial court erred in refusing to permit their suit to be maintained as a class action. While § 40-10-160, Code 1975, sets forth a statutory procedure for the refund of ad valorem taxes, the taxpayers contend they did not have to pursue that statutory remedy because they claimed that the assessment was void and illegal. We agree with the taxpayers. In Graves v. McDonough, 264 Ala. 407, 88 So.2d 371 (1956), this Court held that the statutory procedure for refund of taxes does not apply where the assessment complained of is void and illegal. There, this Court held:
"[The statute] [b]eing void, the taxpayer was not required to pursue any certain remedy to get it so declared and obtain a refund. `The necessity for pursuing the statutory remedy does not exist where the assessment complained of is void and illegal.' 84 C.J.S. Taxation, § 513, Note 90."
Taxpayers also rely on Shanks v. Winkler, 210 Ala. 101, 97 So. 142 (1923), which held, under the statutory remedy for a refund of taxes, a class action was a permissible vehicle to restrain the enforcement of an invalid tax. While the Shanks case did not discuss the question of the recovery of previously collected taxes, this Court did hold that the taxpayers could maintain the class action.
We hold that a class action was a proper remedy for the recovery of any taxes which were paid illegally, but we limit that recovery to the two taxable years next preceding the filing of the complaint. This limitation on recovery would correspond to the statutory scheme which requires that a taxpayer seek a refund within two years. §§ 40-10-160 & 166, Code 1975.
The cause is due to be reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, SHORES and BEATTY, JJ., concur.
BLOODWORTH, ALMON and EMBRY, JJ., concur specially.
TORBERT, C. J., and FAULKNER, J., dissent.
BLOODWORTH, Justice (concurring specially).
I concur in Mr. Justice MADDOX' opinion for the Court except that I do not agree that the statute is not facially unconstitutional. I think it is.
ALMON and EMBRY, JJ., concur.
TORBERT, Chief Justice (dissenting):
I respectfully dissent from the opinion of the majority of the court.
Appellants, plaintiffs below, filed a motion for partial summary judgment in which they argued Code 1975, § 40-8-1(e), "is unconstitutional on its face and that the plaintiffs, as to this issue, are entitled to judgment as a matter of law" because "there is no issue as to any material fact." I agree with the appellants that the issue of whether Code 1975, § 40-8-1(e), is unconstitutional on its face is purely a question of law, but I would hold the statute constitutional on its face, and thus affirm the decision of the trial court.
Appellant's case below was based solely on a demonstration that under Code 1975, § 40-8-1(e), municipal and county taxes for Class III property were assessed at a 15% rate for all counties except Jefferson and Morgan where the ad valorem rate was 20%, and an allegation that the distinction "demonstrates a patent denial of equal protection in that, the residents of Jefferson County ... who own Class III property are not being taxed equally with other Class III taxpayers." As pointed out by the trial court in its final order "Plaintiffs make the claim, unsupported by any facts or evidence, that this distinction constitutes a denial of equal protection and violation of the Fourteenth Amendment to the United States Constitution." I would hold that a mere showing that taxpayers in different counties are treated differently, coupled with an unsupported allegation that the *789 difference in treatment is arbitrary, capricious and without a rational basis, is insufficient to demonstrate that the statute which exacts the different tax rates for different counties is unconstitutional on its face.
The basic tenet of the equal protection clause is not that all persons must be treated equally, but rather that all persons SIMILARLY SITUATED must be treated equally. It has long been recognized by the United States Supreme Court that a state legislature may make classifications among its citizens based on the district or county in which these citizens live. In reference to the equal protection clause of the Fourteenth Amendment, the United States Supreme Court has held:
It contemplates persons and classes of persons. It has not respect to local or municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made.
. . . . .
. . . [T]here is nothing in the Constitution to prevent any state from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the state of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties and the common law method of procedure for the rest of the state, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the state should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For as before said, it has respect to persons and classes of persons. IT MEANS THAT NO PERSON OR CLASS OF PERSONS SHALL BE DENIED THE SAME PROTECTION OF THE LAWS WHICH IS ENJOYED BY OTHER PERSONS OR CLASSES IN THE SAME PLACE AND UNDER LIKE CIRCUMSTANCES. . . . Where part of a state is thickly settled and another part has but few inhabitants it may be desirable to have different systems of judicature for the two portionstrial by jury in one, for example, and not in the other. Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would be an unfortunate restriction of the powers of state government, if it could not, in its discretion, provide for these various exigencies. Missouri v. Lewis, 101 U.S. 22, 31, 25 L.Ed. 989, 992 (1879). (Emphasis supplied.)
The proposition of law that the equal protection clause applies to persons similarly situated rather than all persons within a state was reiterated by the Supreme Court of the United States in Salsburg v. State of Maryland:
We find little substance to appellant's claim that distinctions based on county areas are necessarily so unreasonable as to deprive him of equal protection of the laws guaranteed by the Federal Constitution. The Equal Protection Clause relates to equality between person as such rather than between areas. Salsburg v. State of Maryland, 346 U.S. 545, 74 S.Ct. 280, 283, 98 L.Ed. 281, 288 (1954).
The contention of the appellants that the difference in the ad valorem tax rate between Jefferson County and other counties under Code 1975, § 40-8-1(e), renders that section violative of the Equal Protection Clause on its face is erroneous as a matter of law.
The Fourteenth Amendment to the Constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions. Hayes v. Missouri, 120 U.S. 68, 71, 7 S.Ct. 350, 352, 30 L.Ed. 578 (1887).
*790 Similarly the United States Supreme Court held in Northwestern Laundry v. Des Moines:
As to the attack upon the ordinance because of arbitrary classification, this question has been so often discussed that nothing further need be said. The ordinance applies equally to all coming within its terms, and the fact that other businesses might have been included does not make such arbitrary classification as annuls the legislation. Nor does it make the classification illegal because certain cities are included and others omitted in the statute. Northwestern Laundry v. Des Moines, 239 U.S. 486, 495, 36 S.Ct. 206, 210, 60 L.Ed. 396 (1915). (Emphasis supplied.)
In cases such as this one where there is no suspect class involved nor any fundamental right the rules of law which govern the constitutionality of a statute assailed on equal protection grounds are inveterate. The equal protection clause does not take from the state the power to classify, but allows the state a wide scope of discretion in this regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. When the classification in such a law is called into question, IF ANY STATE OF FACTS REASONABLY CAN BE CONCEIVED THAT WOULD SUSTAIN IT, THE EXISTENCE OF THAT STATE OF FACTS AT THE TIME THE LAW WAS ENACTED MUST BE ASSUMED, and the burden is on the assailant to prove that there is no conceivable rational basis for the statute. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911); Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350 (1912); McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 110, 6 L.Ed.2d 393 (1961).
In Allied Stores of Ohio v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959), the U. S. Supreme Court upheld against an equal protection challenge a state statute which exempted from taxation all property of nonresidents held for storage but taxed all such property of residents, reasoning:
[I]t has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. 358 U.S. at 528, 79 S.Ct. at 441.
The strength of the presumptions in favor of rationality of any legislative classification and the burden on the assailant of that statute are increased if the statute challenged is a tax statute.
The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that "the Fourteenth Amendment was not intended to compel the States to adopt an iron rule of equal taxation," and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it. Madden v. Kentucky, 309 U.S. 83, 87, 60 S.Ct. 406, 408, 84 L.Ed. 590, 125 A.L.R. 1383 (1939). (Emphasis supplied.)
On every occasion that the constitutionality of a state taxation statute has been challenged on equal protection grounds, the U. S. Supreme Court has uniformly held that the discretion accorded to the legislature is extremely broad and the challenger *791 must negative every conceivable rational basis for the statute because the power to tax is essential to the very existence of the state.[1]
In the majority opinion this court states "There may be a rational reason why the legislature selected Jefferson and Morgan Counties for special classification." If the remotest possibility exists that the legislature had a rational basis for its statute then the constitutionality of the statute must be sustained particularly where as here the challenge is to the face of the statute. The majority urges the legislature to specify reasons why citizens of Morgan and Jefferson Counties should be taxed at a higher rate. The U. S. Supreme Court has held that it is not the province of the judiciary to request the legislature to specify the purpose of a statute and the means by which the legislature intends to achieve that end, and then substitute its own judgment for that of the legislature.
We cannot assume that state legislative enactments were adopted arbitrarily or without good reason to further some legitimate policy of the State. WHAT WERE THE SPECIAL REASONS, MOTIVES OR POLICIES OF THE OHIO LEGISLATURE FOR ADOPTING THE QUESTIONED PROVISO WE DO NOT KNOW WITH CERTAINTY, NOR IS IT IMPORTANT THAT WE SHOULD. FOR A STATE LEGISLATURE NEED NOT EXPLICITLY DECLARE ITS PURPOSE. Allied Stores of Ohio v. Bowers, 358 U.S. 522, 528, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959). SEE ALSO: Southwestern Oil Company v. State of Texas, 217 U.S. 114 at 126, 30 S.Ct. 496, 54 L.Ed. 688 (1910). (Emphasis supplied.)
The purpose of the legislature in enacting a tax statute and the means chosen to achieve that purpose are not matters for judicial scrutiny but rather matters of legislative discretion and no tax statute should be declared unconstitutional unless the challenger has negatived every conceivable rational basis for the statute.
The State may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. It is not for us to suggest in any case that a more equitable mode of assessment or rate of taxation might be adopted than the one prescribed by the legislature of the State; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction. Delaware Railroad Tax, 85 U.S. 206, 231, 21 L.Ed. 888 (1873).
The taxpayers in the instant case have not even alleged in their complaint that they can negative every conceivable rational basis for the statute. Originally, on their motion for partial summary judgment, the taxpayers insisted that the difference in treatment of Jefferson County taxpayers and taxpayers of other counties in itself demonstrated that the legislative purpose behind § 40-8-1(e), and the means chosen to reach that purpose were arbitrary and capricious, and thus the statute as a matter of law is unconstitutional on its face. Clearly this is not the law. In briefs the taxpayers changed their theory arguing that because they had successfully demonstrated that taxpayers in Jefferson and Morgan Counties are treated differently from taxpayers in the other sixty-five counties *792 in Alabama, the burden shifted to the defendants to demonstrate that the state had a rational basis for the statute. Just as clearly, this is not the law. The burden rests on the taxpayers to prove every element of their prima facie case including in an equal protection challenge to a tax statute that there is no conceivable rational basis for the statute. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Salsburg v. Maryland, 346 U.S. 545, 553, 74 S.Ct. 280, 98 L.Ed. 281 (1954).
In the recent case of Fox v. Rosewell, 55 Ill.App.3d 860, 13 Ill.Dec. 570, 371 N.E.2d 287 (1977), the Illinois Appellate Court was faced with a case on all fours with the instant case. In that case a real estate taxpayer challenged on equal protection grounds the constitutionality of an Illinois tax statute which imposed a higher tax rate on those taxpayers living in the more populous areas of the state. The trial court took judicial notice of facts which differentiated populous Cook County from other Illinois counties which conceivably could support a rational basis for the legislature's classification.
In rejecting plaintiff's constitutional attack and dismissing his complaint, the trial court took judicial notice of the following facts: that the population of Cook County is approximately one-half of the population of the entire State; that the City of Chicago within the county is by far the largest city in population of any other city in the entire State of Illinois; that the assessed value of property in Cook County is greater than the assessed value of any other county in the State of Illinois; that the cost of education, police and fire protection, sanitation, and other services provided to the people of Cook County is at variance with that of any other county in the State of Illinois; and that the financial needs of providing these services are not only greater, but more urgent, more complicated, and more costly.
. . . . .

It is entirely possible that the legislature in adopting section 224 of the Revenue Act concluded that more densely populated counties have a heavier burden of extending real estate tax revenues to meet their increasing expenses. Plaintiff presents no evidence to the contrary and, in the case before us, we will not substitute our judgment for that of the legislature. At the very least, on the basis of the record before us, we cannot say that the classification is clearly unreasonable or palpably erroneous. Fox v. Rosewell, 55 Ill.App.3d at 290, 291, 13 Ill.Dec. at 573, 574, 371 N.E.2d 287 at 290, 291 (1977). (Emphasis supplied.)
The Illinois Appellate Court affirmed the trial court's decision dismissing the complaint for failure to specifically set forth the facts relied on to rebut the presumption of constitutionality, i. e., to set forth facts which negative every conceivable rational basis for the statute.

A statute is presumed valid and a party challenging it has the burden of proving it violates one's right to equal protection of the laws or one's right to due process, and the facts relied upon to rebut the presumption of constitutionality must be specifically set forth in the complaint. Legislation is not violative of the equal protection clause even though such legislation differentiates between similarly situated persons if it bears a rational relationship to a legitimate legislative purpose. Fox, 55 Ill.App.3d at 292, 13 Ill.Dec. at 575, 371 N.E.2d at 292 (1977). (Emphasis added.)
The Court of Appeal of Louisiana stated the rule governing the sufficiency of complaints which challenge the constitutionality of a statute in the following manner:
The general rule is that a litigant cannot raise the question of the unconstitutionality of a statute or ordinance unless such unconstitutionality has been specially pleaded and the grounds particularized. Whitfield v. Jones, La.App., 270 So.2d 153 (1972). (Emphasis added.)
In order to survive a motion to dismiss in a case where the constitutionality of a tax *793 statute is at issue the complaint must not only allege that similarly situated taxpayers have been treated differently but also that there is no rational basis for the difference in treatment and set forth specifically in the complaint those facts relied upon in making the allegations. In the instant case appellants not only failed to set forth in the complaint the specific facts relied upon to rebut the presumption of constitutionality but also admitted "there is no material issue of fact" and relied solely on a challenge to the face of the statute. In basing their challenge to the constitutionality of Code 1975, § 40-8-1(e), solely on a demonstration that Jefferson County taxpayers are treated differently from taxpayers of other counties, coupled with an unsupported allegation that the legislature had no rational basis upon which to make this classification, plaintiffs have failed to state a claim entitling them to relief. Borrowing once again from the language of the Illinois Appellate Court:
Motions to dismiss or strike a pleading admit facts well pleaded, but not conclusions of law or conclusions of facts unsupported by allegations of specific facts upon which such conclusions rest and when constitutional issues are involved, facts relied upon to rebut the presumption of constitutionality must be specifically set forth. Pierce v. Carpentier, 20 Ill.2d 526, 169 N.E.2d 747 (1960); Heyman v. Mahin, 49 Ill.2d 284, 275 N.E.2d 421 (1971). Illinois Pure Water Committee, Inc. v. Yoder, 6 Ill.App.3d 659, 286 N.E.2d 155, 156 (1972). (Emphasis added.)
I would affirm the trial court's decision which granted defendants' motion to dismiss.
NOTES
[1] Section 40-8-1(e) reads as follows:

In the following designated counties taxable property shall be assessed at the ratio of assessed value to fair and reasonable market value for each class of property at the rate indicated:

County Class I Class II Class III
Morgan 30% 20% 20%
Limestone 30% 20% 15%
Etowah 30% 20% 15%
Clay 30% 20% 15%
Cleburne 30% 20% 15%
Barbour 30% 15% 15%
Coffee 30% 15% 15%
Bullock 30% 15% 15%
Hale 30% 15% 15%
Wilcox 30% 15% 15%
Monroe 30% 15% 15%
Randolph 30% 15% 15%
Perry 30% 15% 15%
Bibb 30% 15% 15%
Houston 30% 15% 15%
Dale 30% 15% 15%
Henry 30% 15% 15%
Jefferson 30% 25% 20%
Calhoun 30% 25% 15%

[1] Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327 (1937); Tax Commissioners v. Jackson, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536 (1931); Ohio Oil Co. v. Conway, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775 (1930); Citizens Telephone v. Fuller, 229 U.S. 322, 329, 33 S.Ct. 833, 57 L.Ed. 1206 (1913); Bell's Gap Railroad Co. v. Pennsylvania, 134 U.S. 232, 237, 10 S.Ct. 533, 33 L.Ed. 892 (1890); Michigan Central Railroad Company v. Powers, 201 U.S. 245, 293, 26 S.Ct. 459, 50 L.Ed. 744 (1906); Home Ins. Co. v. New York, 134 U.S. 594, 606, 10 S.Ct. 593, 33 L.Ed. 1025 (1890); King v. Mullins, 171 U.S. 404, 435, 18 S.Ct. 925, 43 L.Ed. 214 (1898).